Bruce BOLIN; Carla Jane Janeway, b/n/f Dixon Janeway; and Dixie Janeway, b/n/f Dixon Janeway, Plaintiffs-Appellants,

v.

TENNESSEE FARMER'S MUTUAL INSURANCE COMPANY, Defendant-Appellee.

Supreme Court of Tennessee.

April 13, 1981.

T. E. Forgety, Jr., Rainwater, Rainwater & Forgety, Dandridge, for plaintiffs-appellants.

J. Brice Wisecarver, Jefferson City, for defendant-appellee.

OPINION

HARBISON, Chief Judge.

This case arises under the uninsured motorist statute, T.C.A. §§ 56–7–1201 to –1206, but it arises in somewhat unusual circumstances.

Appellants were plaintiffs in a tort action in which a liability insurance carrier conducted the defense of the alleged tort-feasor. Not until after trial and final judgment did the plaintiffs learn that the defendant's insurance carrier had defended the action under a reservation of rights and that it thereafter denied coverage to him. Appellants then, for the first time, invoked

their own uninsured motorist coverage. They were met with the defense that they had failed to comply with the provisions of T.C.A. § 56–7–1206, requiring service of process upon an insurance carrier as though it were a party defendant to the tort action. The uninsured motorist carrier, however, also had liability insurance coverage upon the plaintiff Bruce Bolin. It had been notified of and had participated in the tort litigation because the defendants therein had made counter-claims against Bolin.

Under these circumstances the trial judge held that the plaintiffs were entitled to the benefit of the uninsured motorist coverage. In a split decision, the Court of Appeals reversed, holding that the provisions of T.C.A. § 56–7–1206 were mandatory and that they provided the exclusive method of proceeding against an uninsured motorist insurance carrier. This Court granted permission to appeal in order to give further consideration to the issues.

Appellant Bruce Bolin was the named insured in an automobile liability insurance policy issued by appellee. This policy also afforded uninsured motorist coverage to appellant and to the occupants of his vehicle.

On July 21, 1976, Bolin, accompanied by the other two appellants as passengers, was involved in a collision with a truck driven by Robert Mike Cameron and owned by Glenn Quarles. All of the appellants were injured and filed actions against both Cameron and Quarles. They also sued a road contractor for alleged failure to warn of dangerous road conditions. Subsequently appellants dismissed their action against Quarles upon learning that there was no basis for holding him responsible under a theory of respondeat superior.

Cameron filed a separate action against Bolin and the construction company. The latter then filed a third-party complaint against Bolin, seeking contribution or indemnity. Bolin notified appellee of the claims asserted against him, and appellee conducted the defense of Bolin in the litigation. It was represented by counsel of its selection in that regard. It had been notified of the accident immediately after it

occurred and had conducted an investigation thereof. Until action was brought against Bolin, however, it had "stood by and monitored the litigation" in which Bolin and the other appellants were plaintiffs, according to its brief in this Court.

Cameron had a policy of liability insurance with State Automobile Mutual Insurance Company and sought the coverage and protection of that policy in the suits filed against him by appellants. That company extended a defense to Cameron, but under a reservation of rights because of a question as to whether he had permission of Quarles, the owner, to use the Quarles vehicle at the time of the accident. This insurance carrier selected competent counsel to defend against the claims of appellants. At no time did he or anyone else advise appellants that State Automobile Mutual Insurance Company was defending Cameron under a reservation of rights or that any question existed as to his being protected by liability insurance. During the course of the litigation counsel for State Automobile Mutual made a settlement offer to appellants which was deemed inadequate and was rejected. All actions were tried together. They resulted in a jury verdict for appellants against Cameron and dismissal of all other claims in the proceedings. Only after these judgments had been awarded were appellants advised that State Automobile Mutual had been defending Cameron under a reservation of rights and that it had finally denied coverage to him, rendering him, in effect, an uninsured motorist. Appellants then made demand upon appellee for payment under the uninsured motorist provisions of Bolin's policy. When this demand was rejected, appellants brought the present suit against both appellee and State Automobile Mutual Insurance Company.

Both the trial court and the Court of Appeals held that there was no liability upon State Automobile Mutual Insurance Company by reason of estoppel or otherwise. They found that the insurance carrier had properly conducted the defense of Cameron under a reservation of rights and

that it had not been guilty of misleading any party in the tort litigation. At least by implication it was also found to have been correct in denying coverage to Cameron on the facts. That aspect of the case is not involved in the present appeal.

Despite its knowledge of and participation in the earlier litigation in which appellants obtained judgment, appellee insists that appellants may not invoke Bolin's uninsured motorist coverage because of non-compliance with T.C.A. § 56–7–1206. In addition appellee insists that it was prejudiced by not having been given notice of an uninsured motorist claim earlier so that it could have had an opportunity to participate in the defense of Cameron and to exonerate him or minimize the judgments against him. Although there is logic in this argument, nevertheless it must be recalled that appellee was fully advised of all facets of the earlier litigation and that, through counsel, it participated in the defense of claims made against Bolin. That same counsel could not possibly have represented appellee in the defense of claims against Cameron. Such counsel would have been placed in a position of irreconcilable conflict. Accordingly, appellee would have had to employ separate counsel to defend Cameron, had it been defending in its capacity of uninsured motorist carrier. In actuality, Cameron was ably defended by competent counsel retained by State Automobile Mutual Insurance Company. In the present record there is no evidence that Cameron was not fully defended or that other counsel representing him could have brought about smaller jury awards against him. Therefore, under the circumstances of this case, we are of the opinion that the uninsured motorist carrier has not in fact been prejudiced by the failure of appellants to comply with the statutory procedures for giving notice of an uninsured motorist claim.

The question remains as to whether those statutory procedures are necessarily mandatory and exclusive in all cases. Appellee relies upon the holding of this Court in the case of *Glover v. Tennessee Farmers Mutual Insurance Co.*, 225 Tenn. 306, 468 S.W.2d 727 (1971), to the effect that a claimant must follow the statutory provisions and may not ordinarily file a separate action against his uninsured motorist carrier after obtaining judgment against a motorist in an independent tort action.

We adhere to the holding in the *Glover* case as a general rule, but we do not think that it has application here. It is obvious that under some circumstances an insurance carrier becomes subject to a claim under these statutes at a fairly late stage, or even after the conclusion, of litigation against the tort-feasor. For example, T.C.A. § 56–7–1202 expressly provides that the term "uninsured motor vehicle" shall be deemed to include an otherwise insured motor vehicle

"... where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limit specified therein because of insolvency."

It seems rather clear that this statute embraces a situation not unlike that presented here, where a tort claimant proceeds against a person apparently insured, only to discover at some point that the liability insurance carrier cannot respond to the claim. Under those circumstances the tort claimant is not deprived of the benefit of his own uninsured motorist protection. It is highly unlikely that such a claimant would utilize the provisions of T.C.A. § 56–7–1206 to implead his uninsured motorist carrier unless he happened to be aware, at the inception of the tort litigation, of the unsound financial condition of the liability insurer of the alleged tort-feasor.[1]

---

1. Where a liability insurer denied coverage to an additional insured after its named insured was non-suited, it was held that the plaintiff's uninsured motorist endorsement "became operative" only after plaintiff first ascertained that the remaining defendant had become an unin-
sured motorist. *Allstate Insurance Co. v. Wilson*, 259 S.C. 586, 193 S.E.2d 527, 531 (1972); cf. *McDaniel v. State Farm Mutual Automobile Ins. Co.*, 205 Va. 815, 139 S.E.2d 806 (1965) (uninsured motorist carrier notified after liabili-

The rule laid down by the Court of Appeals in the present case would be a harsh one and would require every plaintiff, suing an apparently insured defendant, also to implead his own uninsured motorist carrier or otherwise lose the benefit of his coverage in the event the tort-feasor should prove to be uninsured for some reason unknown to the plaintiff. While we adhere to the *Glover* decision, *supra,* as a general rule, we find that application of that rule under the unusual facts of this case would be unduly harsh and would deprive appellants of valid insurance which they had purchased, without fault on their part and without the insurer's having been prejudiced.[2]

The judgment of the Court of Appeals is reversed and that of the trial court is reinstated. The cause is remanded to the trial court for enforcement of the judgment and for entry of any further orders which may be necessary. Costs of the cause are taxed to appellee.

FONES, BROCK and DROWOTA, JJ., concur.

WM. I. DAVIS, Jr., Special Justice, dissents.

WM. I. DAVIS, Jr., Special Justice, dissenting.

I respectfully dissent from the majority opinion.

The majority opinion accurately details the facts, the sequence of events in this litigation and the issues for determination.

The pertinent portion of Section 56–7–1206 T.C.A., (formerly 56–1153 T.C.A.), is as follows;

"Any insured intending to rely on the coverage required by Sections 56–7–1201–56–7–1206 shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant; such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name; _ _ _ _ _ _ _ _."

In the statute quoted it is only the appellants on whom an affirmative duty to take certain action is found, namely, serve copies of the process on their own insurance carrier. Rights of the insurance carrier are optional. It may be noted also that the word "shall" is used in connection with the insured's duty. The general rule is that the word "shall" ordinarily is construed to be mandatory rather than merely directory. *Louisville and Nashville Railroad Company v. Hammer,* 191 Tenn. 700, 236 S.W.2d 971; *Stubbs v. State of Tennessee,* 216 Tenn. 567, 393 S.W.2d 150.

There here appears a factual situation not unheard of but certainly not common. Appellants did not serve copies of the process in their actions against Cameron upon appellee. Appellants believed as did appellee that Cameron had insurance coverage by State Automobile Mutual Insurance Company. Neither appellants or appellee misrepresented any fact to the other or did anything to mislead the other about Cameron's insurance coverage or lack of coverage. Neither learned or had reason to suspect that Cameron was uninsured until after the appellants' judgments against Cameron had become final. Appellee had no reason to take cognizance of appellants' tort actions against Cameron until Cameron and Renfro Construction Co. instituted their actions

---

ty insurer defending under reservation of right formally denied coverage).

**2.** Although unusual, the fact situation presented here is not without precedent. Under similar circumstances the holder of a tort judgment was permitted to proceed in a separate suit against an uninsured motorist carrier where, after judgment, the liability carrier which had defended the tort defendant became insolvent.

*Gunnels v. American Liberty Ins. Co.,* 251 S.C. 242, 161 S.E.2d 822 (1968); *cf. Rampy v. State Farm Mutual Automobile Ins. Co.,* 278 So.2d 428 (Miss.1973) (separate action against uninsured motorist carrier allowed where policyholder had obtained judgment in another state against tort-feasor and had no reason to know that the latter was uninsured at that time).

against Bolin. Appellee then began active defense of Bolin and it and appellants cooperated in the defense of Bolin and the prosecution of appellants' actions against Cameron. It appears therefore that appellants had no reason to believe they should serve process on appellee and appellee had no reason to believe that it would ever be placed in a position requiring it to exercise its option to defend Cameron. Whatever opportunities existed to ascertain if Cameron was actually insured or uninsured were equally available to both parties.

I cannot agree that appellee was not prejudiced in any manner as a result of not being served with process. It was deprived of its option to defend Cameron on issues of liability and damages as well as the opportunity to attempt to negotiate settlements. In other words appellee did as a result of its lack of knowledge of the true situation, and being completely blameless as disclosed by the record, join in the offense against Cameron when it might very well have elected to provide defense for Cameron through other and different counsel. It can be insisted that appellants were also prejudiced due to their lack of the true facts but the statute placed on appellants the primary positive duty to act.

The case of *Glover et al. v. Tennessee Farmer's Mutual Insurance Company*, 225 Tenn. 306, 468 S.W.2d 727 had as the principal issue whether the uninsured motorist statutes authorized the insureds to institute actions under provisions of their uninsured motorist policy directly against the insurer. In holding that the insureds could not the court interpreted and construed the statutes. It was held that there is no alternative to the procedure therein established and that the section of T.C.A. above quoted provides the sole court remedy under the pertinent statutes in question.

It is argued that the uninsured motorist statutes were enacted to protect persons injured by negligent operation of vehicles of persons without liability insurance and that the quoted section of T.C.A. does not become operative until it is ascertained the person sued is uninsured. The purpose of the statute is for protection but the time it becomes operative is not necessarily subject to relaxation. The presumption is that it is constantly operative. If exceptions were to have been provided the legislature had and has subsequently had the opportunity to so enact any exceptions it considered proper. I believe the *Glover* case controls and that failure to serve process on appellee was fatal under the facts of this case.

Reliance is placed by appellants on the South Carolina case *Gunnels v. American Liberty Insurance Co.*, 251 S.C. 242, 161 S.E.2d 822. In that case Gunnels had uninsured motorist coverage provided by appellant. Gunnels was injured by Hewitt in a vehicular collision, sued and obtained judgment. Later Hewitt became uninsured by reason of his insurance carrier becoming insolvent. It was held that appellant was liable to Gunnels under the peculiar circumstances of that case, the Court construing the South Carolina statutes in so doing.

It appears that the principal peculiar circumstances in the *Gunnels* case was that Hewitt, the "uninsured" motorist was actually insured until his insurer, American Liberty, became insolvent after the trial of the original tort action was completed. Here the "uninsured" motorist, Cameron, was at all times uninsured. The South Carolina court in *Gunnels* placed reliance for its conclusion on a decision by the Supreme Court of Virginia in the case of *McDaniel v. State Farm Mutual*, 205 Va. 815, 139 S.E.2d 806. However, in the Virginia case the plaintiff's insurer had received written notice prior to trial of the tort action that defendant was uninsured.

There appears to be no provision of the insurance policy or the applicable statutes to justify under the facts of this case any relaxation of the requirement to serve the insurer with copies of the process. If exceptions to the specific directive in the statute are to be formulated they should be by legislative enactment rather than by judicial decision.

I would affirm the Court of Appeals.