Sanders K. WHALEY and wife, Della Whaley, Plaintiffs–Appellants,

v.

Christopher S. UNDERWOOD and Robert S. Underwood, Defendants,

and

Preferred Risk Mutual Insurance Company, Defendant–Appellee.

Court of Appeals of Tennessee, Eastern Section.

March 31, 1995.

Rehearing Denied April 28, 1995.

Gerald L. Gulley, Jr., of Baker, McReynolds, Byrne, Brackett, O'Kane & Shea, Knoxville, for appellant.

Douglas L. Dutton, of Hodges, Doughty & Carson, Knoxville, for appellee.

## OPINION

SUSANO, Judge.

This appeal involves a coverage question under the uninsured motorist (UM) provisions of the appellants' automobile insurance policy. In their original complaint, the appellants, Sanders K. Whaley and his wife, Della Whaley (Whaleys), sued Christopher S. Underwood and Robert S. Underwood (Underwoods) for damages arising out of an automobile accident. Almost four years later, the Whaleys joined their insurer, Preferred Risk Mutual Insurance Company (Preferred Risk), in that suit under the UM feature of their policy pursuant to the provisions of T.C.A. § 56-7-1206. Preferred Risk filed a motion for summary judgment on the ground that the Whaleys did not "promptly" send it "copies of the legal papers" in their suit against the Underwoods as they were required to do by the terms of their policy. The trial court granted Preferred Risk summary judgment, and the Whaleys filed this appeal.

## I

The appellants frame one issue for our review. Taken verbatim from their brief, it is as follows:

Whether the trial court erred in granting summary judgment in favor or (sic) the uninsured/underinsured motorist insurance company, which had timely notice of the plaintiff's automobile accident and received formal service of the Summons and Complaint just over one and one-half years after receiving copies of the pleadings from plaintiffs' counsel, when a question of material fact exists regarding prejudice to the insurance company?

We find that the trial court acted properly in granting summary judgment. Accordingly, we affirm the judgment below.

## II

On February 8, 1988, Mr. Whaley was injured in an automobile accident when his vehicle was struck in the rear by one driven by Christopher S. Underwood. The next day, he reported the accident to Preferred Risk as he was required[1] to do by the terms of his policy. The Whaleys[2] filed suit against the Underwoods on January 12, 1989. In mid-February, 1991, two years after suit was filed, the Whaleys, through their counsel, ascertained, apparently for the first time, that the Underwoods' liability insurance coverage was not sufficient to cover Mr. Whaley's claim. Counsel for the Whaleys sent a letter to Preferred Risk dated April 2, 1991, informing it that he "may" issue a summons and complaint against Preferred Risk "within the next few days ... as required by the Tennessee UM statute." Counsel's letter of April 2, 1991, enclosed a copy of the Whaleys' complaint against the Underwoods. As far as the record before us reflects, counsel's letter of April 2, 1991, was the first time the Whaleys had sent Preferred Risk a copy of their complaint against the Underwoods. In defense of their position in this case, the Whaleys insist that they and their attorney were in frequent contact with representatives of Preferred Risk by telephone throughout the interval between January, 1989, and April, 1991; however, the Whaleys did not serve the complaint and summons on Preferred Risk until December 30, 1992, almost four years after the suit was originally filed and some 20 months after sending the letter notifying Preferred Risk of a possible UM suit. There is no proof in the record before

---

1. This requirement is separate and distinct from the one at issue in this case. The former provides that Preferred Risk "must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses."

2. Mrs. Whaley's claim was for loss of consortium.

us that Preferred Risk was aware of the lawsuit against the Underwoods until it received counsel's letter of April 2, 1991.

Preferred Risk filed its answer in May, 1993, asserting that the Whaleys had failed to promptly send it a copy of the original complaint as required by their policy. In its answer, Preferred Risk argues that it has been prejudiced by the delay because, as it routinely does under similar circumstances, it destroyed its file on the underlying claim in the interim between notification of the accident on February 9, 1988, and the receipt of counsel's letter of April 2, 1991.

Preferred Risk filed a motion for summary judgment, asserting that no genuine issue of material fact remained to be decided. Preferred Risk's claims manager asserts in a supporting affidavit that the company never received any notice of suit prior to formal service of the summons in December, 1992; however, an adjuster for Preferred Risk stated during his deposition that he remembered receiving a letter with contents similar to the April 2, 1991, letter. For the purpose of this appeal, we accept [3] as true the appellants' assertion, as established by their counsel's letter of April 2, 1991, that this letter transmitted a copy of the complaint against the Underwoods. Hence, we must determine if the transmittal of the complaint on April 2, 1991, satisfies the policy requirement that the insured promptly send the insurer copies of the legal papers in the underlying tort action.

■ The pertinent provisions of the Whaleys' insurance policy provide as follows:

### PART E—DUTIES AFTER AN ACCIDENT OR LOSS

\*　　\*　　\*　　\*　　\*　　\*

C. A person seeking Uninsured Motorists Coverage must also:

\*　　\*　　\*　　\*　　\*　　\*

2. Promptly send us copies of the legal papers if a suit is brought.

\*　　\*　　\*　　\*　　\*　　\*

### PART F—GENERAL PROVISIONS

\*　　\*　　\*　　\*　　\*　　\*

### LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy.

While we have found a number of appellate decisions in this state addressing policy provisions requiring notice of the accident or event that leads to the insured's claim, we have not found any authority on the precise issue before us on this appeal; however, we believe the "notice" cases we have found are, by analogy, helpful in resolving the issue before us.

### III

■ Our review of the judgment in this case is controlled by Tenn.R.Civ.P. 56.03, which provides that summary judgment "shall be rendered" when the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In considering a summary judgment motion, we must "take the strongest legitimate view of the evidence in favor of the non-moving party" and "allow all reasonable inferences in favor of that party," while discarding all countervailing evidence. *Byrd v. Hall,* 847 S.W.2d 208, 210–11 (Tenn.1993). The phrase "genuine issue" refers exclusively to factual issues and not to legal conclusions that could be drawn from the facts. *Id.* at 211.

■ We begin our analysis by observing that "[i]nsurance contracts are subject to the same rules of construction and enforcement as apply to contracts generally." *McKimm v. Bell,* 790 S.W.2d 526, 527 (Tenn.1990); *Allstate Ins. Co. v. Wilson,* 856 S.W.2d 706 (Tenn.App.1992). Therefore, contracts will be enforced as written, absent fraud or mistake, even though they contain arguably harsh or unjust terms. *Id.* at 708. This court pointed out in *Allstate* that "[n]otice provisions of an insurance policy are valid

---

**3.** "The evidence offered by the nonmoving party must be taken as true." *Byrd v. Hall,* 847

S.W.2d 208, 215 (Tenn.1993).

conditions precedent to coverage, and in the absence of notice as required no coverage is afforded even though ... the insurer has not been prejudiced by the delay in notice." *Id.* at 709. Although the *Allstate* case involved a homeowner's insurance policy and a policy provision requiring notice of a loss, we believe that the teachings of that case are applicable to the instant litigation. Both the *Allstate* contract and the contract at issue here mandate that the insured "promptly" take some action. Both policies contain additional clauses conditioning suit against the insurance company on "full compliance" with the terms of the policies. As we said in *Allstate*[4], prejudice to the insurer is irrelevant, and hence it cannot be relied upon to create a genuine issue of material fact.

The *Allstate* case is also instructive on the meaning of the term "prompt" as used in the notice requirement there as well as the one at issue in the instant case. In *Allstate,* the court quoted with approval from American Jurisprudence 2d:

> A requirement in a policy for "prompt" or "immediate notice," or that notice must be given "immediately," "at once," "forthwith," "as soon as practicable," or "as soon as possible" generally means that the notice must be given within a reasonable time under the circumstances of the case.

44 Am.Jur.2d, Insurance, § 1330.

The appellants rely on the case of *Gatlin v. Tennessee Farmers Mut. Ins. Co.* 741 S.W.2d 324 (Tenn.1987). The facts of *Gatlin* are very different from the ones before us in the instant case. Furthermore, the issue of notice was only tangentially involved in *Gatlin.* The main holding of *Gatlin* is that "[t]he only [statutory] requirements [for suing under UM coverage] are that the issue of coverage be plead and tried before the original action is terminated." *Id.* at 326. In *Gatlin,* the question was compliance with T.C.A. § 56–7–1206, an issue not before us in this case. The Whaleys complied with that statutory provi-

sion. What they failed to do was comply with their policy's requirement that they promptly send Preferred Risk copies of their legal papers against the tortfeasor. Almost 27 months passed after the Whaleys filed suit against the Underwoods before the Whaleys complied with the notice of suit papers requirement. Delaying for 27 months cannot in this case, under any stretch of the imagination, be considered reasonable. The appellants failed to "promptly send [Preferred Risk] copies of the legal papers" in its suit against the Underwoods. Their failure to comply with this condition precedent bars their claim against Preferred Risk under the UM provisions of their policy.

There is no genuine issue as to any material fact in this case. The facts before us clearly show that Preferred Risk is entitled to judgment as a matter of law.

The judgment of the trial court is affirmed. This cause is remanded to the court below for the collection of costs assessed there. The costs of this appeal are taxed against the appellants and their surety.

GODDARD, P.J. (E.S.), and FRANKS, J., concur.

### OPINION ON PETITION TO REHEAR

The Whaleys have filed a petition for rehearing. They argue that we failed to consider the fact that they did not learn that the Underwoods were underinsured until three years after the accident. The Whaleys also argue that we overlooked the case of *Lee v. Lee,* 732 S.W.2d 275 (Tenn.1987). They contend that under *Lee* their mailing of a copy of their complaint against the Underwoods to Preferred Risk approximately a month and a half or so after learning the Underwoods were underinsured complied with the policy requirement that a party seeking UM coverage must "[p]romptly send [Preferred Risk] copies of the legal papers if a suit is brought."

---

**4.** The *Allstate* case relied upon an earlier decision by this court in the case of *Tennessee Farmers Mutual Insurance Co. v. Nee,* 643 S.W.2d 673, 675 (Tenn.App.1982):

> It is established that notice provisions of an insurance policy are valid conditions precedent to coverage, and in the absence of notice as required no coverage is afforded even though (1) the policy does not contain a forfeiture claim (sic), and (2) the insurer had not been prejudiced by the delay in notice.

*Lee* is not controlling. It does not involve the policy requirement at issue in this case. The Supreme Court in *Lee* addressed a policy provision requiring that the insurance company

must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

That provision is also in the policy in the instant case; however, compliance with that provision was never an issue before us. Mr. Whaley clearly complied with that provision when, on the day after the accident, he called his Preferred Risk agent and gave him the details concerning the accident. We are concerned with a different condition precedent to coverage. While some of the principles enunciated in *Lee* are helpful in resolving the instant case, *Lee* does not require a result different from the one announced in our original opinion.

In the instant case, the Whaleys and Preferred Risk agreed in the contract of insurance that the Whaleys would "promptly" send the company "copies of the legal papers if a suit" were brought. Such a suit was brought on January 12, 1989. A copy of the complaint was not mailed to Preferred Risk until April 2, 1991, some 27 plus months later. We believe that a delay of approximately 27 months is facially unreasonable as a matter of law.

An insurance company that has issued a policy providing UM coverage has an obvious interest in any tort action filed by its insured. The defendant tortfeasor may be uninsured, thereby triggering the UM coverage; or the defendant may be underinsured, thus partially involving the UM carrier's coverage; or the defendant may initially have adequate insurance coverage with a company that subsequently becomes insolvent. Since a UM claim is generally[1] adjudicated in the tort litigation, an insurance company has something more than a pedestrian interest in that litigation. Early notice of the litigation will enable the UM carrier, should it so choose, to monitor the litigation in which it may later find itself embroiled. An insurer with UM coverage will be particularly interested if the underlying litigation involves a significant personal injury and significant liability exposure. In any event, the carrier will undoubtedly benefit from notice of the litigation before it is named as a UM coverage defendant. In the context of underinsurance, the company will be able to identify and possibly communicate with the tortfeasor's insurance carrier. One can think of many benefits to an insurance company that will be derived from early notice of the tort lawsuit.

We do agree with the observation of the Supreme Court in *Lee* that the concept of "prompt" notice entails "notice within a reasonable time under the circumstances of the case." 732 S.W.2d at 276. The undisputed facts upon which Preferred Risk's motion for summary judgment was based show, as a matter of law, that the Whaleys did not act within a reasonable period of time. A 27–month delay is simply too long. The defendant's motion and supporting facts shifted the burden to the Whaleys to show "that there are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact and that a trial is therefore necessary." *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn.1993). The fact that they did not learn until mid-February, 1991, that the Underwoods were underinsured is not sufficient, standing alone, to condone a failure to notify the UM carrier. This is the clear teaching of *Lee,* upon which the appellants in this case rely so heavily. In *Lee,* the plaintiff did not determine definitely that the defendants were uninsured until *after* it filed suit; but the court in *Lee* held that notice of the accident ten months after the accident and *before* suit was filed was not reasonable. We agree with the *Lee* court that the question of reasonableness in these type cases is an issue for the court. 732 S.W.2d at 276. The Whaleys failed to show why it took so long before they determined that the Underwoods were underinsured. They offered no facts reflecting that they took reasonable steps to satisfy themselves that the Underwoods had adequate coverage. To defeat the insurance company's motion, "it must be

1. *Cf. Bolin v. Tennessee Farmers Mut. Ins. Co.,* 614 S.W.2d 566, 568 (Tenn.1981).

shown that the claimant exercised due diligence and reasonable care in ascertaining that there was coverage under the policy." *Id.* The record before us does not reflect that the Whaleys did anything to make this determination.

The "notice of legal papers" requirement is a simple one. If one thinks he or she may want to invoke the UM coverage in the future because the defendant is uninsured or underinsured or the defendant's company is or becomes insolvent, that person must "promptly" send the UM carrier a copy of the complaint against the tortfeasor. Obviously, a plaintiff, who is then usually being guided by counsel, knows when suit has been filed. Unlike an accident or loss that may or may not be an event triggering UM coverage, the filing of a suit, in which the insurance company has an obvious interest, is a known, concrete fact. One cannot wait 27 months, and expect an insurance company to provide UM coverage. The contract between the parties, by its plain and unambiguous terms, requires more. The undisputed facts in this case demonstrate, as a matter of law, that the Whaleys did not comply with this requirement within a reasonable time after suit was filed.

Costs associated with the petition for rehearing are taxed to the appellants and their surety.