IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

# DONALD E. GRIFFIN v. SHELTER MUTUAL INSURANCE COMPANY

**Appeal from the Chancery Court for Davidson County**
**No. 97-1104-I  Carol L. McCoy, Chancellor**

---

**No. M1997-00042-SC-R11-CV - Decided May 1, 2000**

### FOR PUBLICATION

---

The appellant, Donald E. Griffin, brought suit seeking damages for injuries he sustained when his vehicle was struck from the rear in Maury County by a car driven by Richard Vaughn. After obtaining a judgment against Vaughn in the amount of $225,000, Griffin learned that Vaughn had only $50,000 of liability insurance coverage. Griffin then requested that his uninsured motorist carrier, the appellee Shelter Mutual Insurance Company ("Shelter"), pay the remainder of the judgment up to its policy limit of $100,000. When Shelter refused the claim, Griffin brought this action against Shelter in the Chancery Court for Davidson County. The Chancellor granted summary judgment to Shelter, finding that Griffin had failed to comply with the notice provisions of the insurance policy and with the service provisions of Tenn. Code Ann. § 56-7-1206(a). The Court of Appeals agreed that Griffin had failed to comply with the service provisions of Tenn. Code Ann. § 56-7-1206(a) and thus affirmed the grant of summary judgment in favor of Shelter. This Court thereafter granted Griffin's application for permission to appeal.

**Tenn. R. App. P. 11 Appeal by Permission from the Court of Appeals to the Supreme Court; Judgment of the Court of Appeals Affirmed**

DROWOTA, J., delivered the opinion of the court, in which ANDERSON, C.J., BIRCH, HOLDER, and BARKER, JJ., joined.

Charles Patrick Flynn and Michael K. Radford, Brentwood, Tennessee, for the appellant, Donald E. Griffin.

Thomas W. Hardin and Kim B. Kettering, Columbia, Tennessee, for the appellee, Shelter Mutual Insurance Company.

### OPINION

This Court granted Donald E. Griffin's application for permission to appeal to consider: (1) whether language in the uninsured motorist insurance policy waived the requirements of service

under Tenn. Code Ann. § 56-7-1206(a); and (2) whether strict application of the statute to bar Griffin's claim is contrary to the public policy of this State as expressed in <u>Alcazar v. Hayes</u>, 982 S.W.2d 845 (Tenn. 1998) and <u>Bolin v. Tennessee Farmers Mut. Ins. Co.</u>, 614 S.W.2d 566 (Tenn. 1981). We conclude that the language of the insurance policy does not waive the statutory requirement of service and that strict application of the statute is not contrary to public policy. Accordingly, the judgment of the Court of Appeals upholding the Chancellor's grant of summary judgment is affirmed.

## BACKGROUND

On May 14, 1994, the appellant was involved in an automobile accident on I-65 in Maury County in which his car was struck from the rear by a vehicle driven by Richard Vaughn. Vaughn had liability insurance coverage with Allstate Insurance Company ("Allstate"). Allstate reimbursed Griffin for the property damage to his car caused by the accident; however, Griffin eventually obtained an attorney and filed suit in Maury County Circuit Court to recover damages for personal injuries he sustained in the accident. Allstate provided counsel to defend Vaughn. Although Shelter also retained counsel for the limited purpose of protecting its subrogation claim for medical payments made to Griffin under the medical payments coverage, Griffin's attorney agreed to protect Shelter's subrogation interest at one hundred percent. Therefore, Shelter's attorney did not actively participate in the Maury County lawsuit. Moreover, it is undisputed that Griffin did not serve Shelter with a copy of the process in accordance with Tenn. Code Ann. § 56-7-1206(a).[1] It is also undisputed that Griffin did not forward to Shelter any of the "legal papers" relating to his lawsuit against Vaughn.

Griffin's suit against Vaughn proceeded to trial, and on May 31, 1996, the jury returned a verdict for Griffin in the amount of $225,000. After the judgment was rendered, Vaughn's attorney informed Griffin's attorney that Vaughn had only $50,000 of liability insurance coverage. Thereafter, in early October of 1996, Griffin's attorney notified Shelter in writing for the first time that Griffin intended to make a claim under his uninsured motorist policy and provided Shelter with a copy of the judgment against Vaughn. After Shelter denied Griffin's claim under the uninsured motorist policy, Griffin filed this lawsuit against Shelter in the Chancery Court for Davidson County on April 1, 1997.

---

[1]That statute provides as follows:

Any insured intending to rely on the coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant. Such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name; provided, that nothing in this subsection shall prevent such owner or operator from employing counsel of the owner's own choice; and provided further; that the evidence of service upon the insurance carrier shall not be made a part of the record.

On August 29, 1997, Shelter filed a motion for summary judgment. Griffin responded and also moved for summary judgment. By an order entered November 3, 1997, the Chancellor granted Shelter's motion for summary judgment and dismissed Griffin's complaint. Griffin appealed the Chancellor's decision, and the Court of Appeals affirmed the trial court's finding that summary judgment was appropriate since Griffin had failed to comply with Tenn. Code Ann. § 56-7-1206(a). For the following reasons, we affirm the judgment of the Court of Appeals.

## STANDARD OF REVIEW

The standards governing an appellate court's review of a summary judgment motion are well settled. Our inquiry involves purely a question of law; therefore, we review the record without a presumption of correctness to determine whether the absence of genuine and material factual issues entitle the movant to judgment as a matter of law. Robinson v. Omer, 952 S.W.2d 423, 426 (Tenn. 1997); Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997); McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, 894 (Tenn. 1996); Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993); Tenn. R. Civ. P. 56.03.

## STATUTORY REQUIREMENT

We begin our analysis of the issues in this appeal by considering Tenn. Code Ann. § 56-7-1206(a), the statutory provision requiring service of process upon the uninsured motorist carrier, and the judicial decisions which have applied and interpreted this provision. The statute provides that

> [a]ny insured intending to rely on the coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant. Such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name; provided, that nothing in this subsection shall prevent such owner or operator from employing counsel of the owner's own choice; and provided further; that the evidence of service upon the insurance carrier shall not be made a part of the record.

The intention of the General Assembly in enacting this statute was to provide an efficient procedure to allow persons to obtain complete relief from their uninsured motorist policy when injured by an uninsured motorist who is financially unable to respond in damages. See Brewer v. Richardson, 893 S.W.2d 935, 938 (Tenn. 1995); Winters v. Estate of Jones, 932 S.W.2d 464, 466 (Tenn. Ct. App. 1996) perm. app. denied (Tenn. Oct. 7,1996); Lady v. Kregger, 747 S.W.2d 342, 345 (Tenn. Ct. App. 1987).

In Glover v. Tennessee Farmers Mut. Ins. Co., 225 Tenn. 306, 468 S.W.2d 727 (Tenn. 1971), this Court held that, absent a specific policy provision authorizing a direct action, the uninsured motorist statute does not permit a plaintiff to bring suit directly against an uninsured motorist carrier. Our decision in Glover disallowing such direct actions was prompted by a number of considerations, including: "(1) the insurer's right to remain anonymous; (2) the effect of direct suits on the insurer's

statutory right of subrogation; and (3) the nature of the "protection" afforded by the uninsured motorist statutes." Brewer, 893 S.W.2d at 937. The Glover court addressed this latter consideration and summarized its holding in the following manner:

> The whole intent and purpose of the uninsured motorist act is, in essence, to provide *protection* by making the insurance carrier stand as the insurer of the uninsured motorist, with two necessary consequences. (1) The suit has to be brought against the uninsured motorist, with the fact of insurance excluded as a possible prejudicing factor, as in any other such case; and (2) the insurance company is bound by the judgment rendered in that suit, to the extent of its policy limits, where it is afforded the statutory opportunity to defend the uninsured motorist.

Glover, 468 S.W.2d at 730 (emphasis in original).

Although we did not explicitly address in Glover the statutory service requirement at issue in this appeal, the Court of Appeals has squarely faced the issue and held that an insured must strictly comply with the statute's requirement relating to service of process. In Eyman v. Kentucky Central Ins. Co., 870 S.W.2d 530 (Tenn. Ct. App. 1993) perm. app. denied (Tenn. Jan. 31, 1994), the Eymans were involved in an automobile accident with an uninsured motorist. The Eymans sought compensation under the uninsured motorist policy issued to them by Kentucky Central Insurance Company ("Kentucky Central"). When settlement negotiations with Kentucky Central broke down, the Eymans filed suit against the uninsured motorist. The Eymans mailed a letter, along with a copy of the complaint and an unsigned copy of the summons to Kentucky Central. However, no summons was issued or process served on Kentucky Central pursuant to Tenn. R. Civ. P. 4.02. Accordingly, Kentucky Central did not file an answer or otherwise appear in the action. The Chancellor entered a default judgment against the uninsured motorist in the amount of $125,000, and thereafter, the Eymans filed suit seeking a declaratory judgment against Kentucky Central for $125,000. The Chancellor granted the Eymans' motion for summary judgment, but the Court of Appeals reversed upon finding that the Eymans had failed to strictly comply with the statutory requirement of service.

In so holding, the Court of Appeals first stressed that the plain language of Section 1206(a) directs that the plaintiff shall "serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant." Eyman, 870 S.W.2d at 531. Although acknowledging that Kentucky Central no doubt understood the ramifications of the letter sent by the Eymans' attorney, the Court of Appeals found that the letter was insufficient to "constitute compliance with the statute." Id. at 532. The Court of Appeals emphasized that "the legislature has seen fit to set up procedural rules in order to protect the rights of litigants. It is the responsibility of this court to enforce those rules." Id.

Our review of the foregoing authorities clearly establishes that in the absence of a policy provision, a plaintiff generally may not institute a direct action against an uninsured motorist carrier, and a plaintiff intending to rely upon uninsured motorist coverage must strictly comply with the statutory requirements relating to service of process. With these general principles in mind, we

-4-

proceed to the issues in this appeal.

## POLICY PROVISION

In this Court, Griffin concedes that he did not serve Shelter in accordance with Tenn. Code Ann. § 56-7-1206(a), but he argues that summary judgment is inappropriate because a specific provision in his uninsured motorist policy waives the statutory requirement of service. The policy provision upon which Griffin relies contains the following language:

> . . . No judgment on a suit against a person or firm causing the bodily injury will determine whether we will have to pay, or how much, <u>unless we have consented in writing that suit be brought</u>.

According to Griffin, this policy provision should be construed to permit a direct action against Shelter following entry of a judgment against an uninsured motorist if Shelter consented in writing to the insured's institution of the lawsuit against the uninsured motorist. Griffin argues that Shelter consented in writing to the institution of the action against Vaughn when the attorney Shelter retained to protect its subrogation interest made a written offer to assist Griffin's attorney in the prosecution of the action against Vaughn.

In contrast, Shelter argues that Griffin is reading the policy provision in isolation and out of context. Shelter asserts that the policy provision upon which Griffin relies actually establishes an additional condition that must be satisfied and that the provision does not waive Griffin's obligation to also comply with the requirements of Tenn. Code Ann. § 56-7-1206(a). Since the evidence is undisputed that Griffin did not comply with the requirements of Section 1206(a), Shelter argues that the lower courts correctly granted summary judgment.

This Court has previously recognized that "[a]n insurance policy is a contract of adhesion drafted by the insurer." <u>Alcazar</u>, 982 S.W.2d at 851 (citing <u>Bill Brown Const. v. Glens Falls Ins.</u>, 818 S.W.2d 1, 12 (Tenn. 1991)). As such, insurance contracts do not contain terms which are the result of mutual negotiation and concession but instead contain terms fixed by the insurer and to which the insured must adhere if the insured desires insurance coverage. <u>Alcazar</u>, 982 S.W.2d at 851-52 (citing <u>Brandt v. Mutual Ben. Health & Acc. Ass'n</u>, 30 Tenn. App. 14, 202 S.W.2d 827 (1947)). Given these realities, we construe provisions in an insurance policy against the insurer and in favor of the insured so as to provide coverage. <u>Id.</u> Like any other contract, however, this Court has a duty to enforce insurance contracts "according to their plain terms. Further, the language used must be taken and understood in its plain, ordinary and popular sense. The courts, of course, are precluded from creating a new contract for the parties." <u>Alcazar</u>, 982 S.W.2d at 848-49 (quoting <u>Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.</u>, 521 S.W.2d 578, 580 (Tenn. 1975)).

Applying these well-settled rules, we reject Griffin's argument that the policy provision allowed him to forego compliance with the statute. Griffin is essentially asking this Court to create a new contract for the parties. The plain language of the policy provision does not waive the statutory requirement. The statutory requirement of service is not even mentioned in the policy provision. Indeed, as Shelter argues, the policy provision appears to set out a condition, written consent, that is supplementary to the statutory requirement of service. Accordingly, we reject

-5-

Griffin's argument that the policy provision allowed him to forego the statutory requirement of service of process.

## PUBLIC POLICY EXCEPTION

Griffin next argues that this Court should reverse the decision of the lower courts because applying the statute strictly to bar his claim is contrary to the public policy of this State as expressed by this Court Alcazar v. Hayes, 982 S.W.2d 845 (Tenn. 1998) and Bolin v. Tennessee Farmers Mut. Ins. Co., 614 S.W.2d 566 (Tenn. 1981). Shelter responds that this Court should strictly apply Tenn. Code Ann. § 56-7-1206(a) because it is an expression of the public policy of this State.

In Alcazar, this Court considered whether an uninsured motorist policy is automatically forfeited when the insured does not comply with the notice provision of the insurance policy. Abandoning the traditional approach, which recognized that notice is a condition precedent to recovery under a policy and which required automatic forfeiture even without a showing of prejudice to the insurer, we adopted in Alcazar the modern trend and held that in order for forfeiture of an insurance policy to result from an insured's breach of a notice provision, prejudice to the insurer must be shown. See Alcazar, 982 S.W.2d at 856. In so holding, we stated that "this state's public policy disfavors the ability of the insurer to escape its contractual duties due to a technicality." Id. at 852.

While Griffin is correct that we considered public policy in reaching our decision in Alcazar, Griffin fails to recognize that in Alcazar, we were considering not a statute, but an insurance contract. Here, Griffin asks us to find that a statutory provision should not be applied because it is against public policy. As we recognized in Alcazar "the determination of public policy is primarily a function of the legislature" and the judiciary determines "public policy in the absence of any constitutional or statutory declaration." Id. at 851 (emphasis added). The issue in this appeal is specifically governed by a statutory provision adopted by the General Assembly, the governmental branch primarily responsible for determining public policy. We are not at liberty to simply declare that the statute violates public policy and refuse to apply its plain language. As we have recognized on many occasions, it is not the duty of courts to alter or amend a statute[2], question the statute's reasonableness, or "substitut[e] [our] own policy judgements for those of the legislature." BellSouth Telecomms., Inc. v. Greer, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997). Griffin's reliance upon Alcazar is misplaced.

Finally, Griffin contends that the lower courts erred in granting summary judgment because this case is controlled by Bolin which announced a narrow exception to the general rule that precludes an insured from bringing a direct action against an uninsured motorist carrier. We find that Bolin is distinguishable.

In Bolin, the plaintiff pursued his tort claim against an apparently insured defendant without

---

[2]See Town of Mount Carmel v. City of Kingsport, 217 Tenn. 298, 306, 397 S.W.2d 379, 382 (1965).

serving his own uninsured motorist carrier. However, the plaintiff's carrier had actively participated in the lawsuit defending the plaintiff from a counter-claim. Following the trial, the plaintiff learned for the first time that the defendant was effectively uninsured because the defendant's insurance carrier had defended the action under a reservation of rights and had thereafter denied coverage to the defendant. The plaintiff then sued his uninsured motorist carrier.

Under those particular circumstances, this Court held that the plaintiff in Bolin could maintain a direct action against his uninsured motorist carrier. This Court pointed out that the uninsured carrier in Bolin had been actively involved in the litigation because the carrier had defended the plaintiff on a cross-claim and was therefore not prejudiced by the plaintiff's failure to comply with the statute. In so holding, this Court stated:

> [t]he rule laid down by the Court of Appeals in the present case would be a harsh one and would require every plaintiff, suing an apparently insured defendant, also to implead his own uninsured motorist carrier or otherwise lose the benefit of his coverage in the event the tort-feasor should prove to be uninsured for some reason unknown to the plaintiff. While we adhere to the Glover decision, supra, as a general rule, we find that application of that rule under the unusual facts of this case would be unduly harsh and would deprive appellants of valid insurance which they had purchased, without fault on their part and without the insurer's having been prejudiced.

Bolin, 614 S.W.2d at 568-69.

One key fact fully distinguishes this case from Bolin. Unlike the uninsured motorist carrier in Bolin, Shelter did not actively participate in the trial of the lawsuit against Vaughn, the uninsured motorist. Accordingly, the holding of Bolin does not apply to this case. Contrary to Griffin's argument, by refusing to apply Bolin we are not adopting a rule which will require a plaintiff to bring suit against his or her uninsured motorist carrier in every case. In this case, Griffin asserted a large claim against Vaughn, $500,000. Vaughn's only settlement offer was $17,500, even after Griffin offered to discuss a settlement at policy limits. We agree with the Court of Appeals that under these circumstances it is only logical for the plaintiff to follow the statutory mandate and serve the uninsured motorist carrier so that the carrier may determine how to protect its own interests. The holding in Bolin does not apply in this case to excuse Griffin's failure to comply with the statutory provision requiring service upon the uninsured motorist carrier. Indeed, as the Court of Appeals recognized, were we to apply Bolin to this case, the exception would very shortly swallow the general rule.

## CONCLUSION

Having concluded that the language of the insurance policy does not waive the statutory requirement of service and that strict application of the statute is not contrary to public policy, we affirm the judgment of the Court of Appeals upholding the Chancellor's grant of summary judgment. Costs of this appeal are taxed to the appellant, Donald E. Griffin, for which execution may issue if necessary.