IN THE COURT OF APPEALS OF TENNESSEE

FILED

December 30, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| HAULERS INSURANCE COMPANY, INC., | ) | C/A NO. 03A01-9611-CV-00356 |
| | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| DAMIAN V. BURKE, | ) | APPEAL AS OF RIGHT FROM THE |
| | ) | BRADLEY COUNTY CIRCUIT COURT |
| Defendant-Appellee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| | ) | |
| MICHAEL T. HUNTER, | ) | |
| | ) | |
| Intervening | ) | HONORABLE JOHN B. HAGLER, JR., |
| Petitioner-Appellee. | ) | JUDGE |


For Appellant                          For Appellee Hunter

JOHN T. RICE                           ROGER E. JENNE
Rice, Kreitzer & Winer, P.C.           Jenne, Scott & Bryant
Chattanooga, Tennessee                 Cleveland, Tennessee


                                       For Appellee Burke

                                       NO APPEARANCE


O P I N I O N


AFFIRMED AS MODIFIED
REMANDED                                       Susano, J.

1

This is a declaratory judgment action filed by Haulers Insurance Company, Inc. (Haulers). As originally filed, it sought a declaration that Haulers was not required to indemnify or defend Damian V. Burke (Burke) and Edward Thompson (Thompson) with respect to a suit for personal injuries filed by Michael T. Hunter (Hunter) against Burke, Thompson, and the owners of J & D Auto Sales. Hunter, who was allowed to intervene in the instant case, filed a motion for summary judgment, as did Haulers and Burke. After the underlying tort action was tried, the trial judge in the case at bar considered the pending motions for summary judgment. He entered a judgment on July 15, 1996, declaring that Burke was covered as an insured up to $100,000 under the liability feature of the garage insurance policy issued by Haulers to Donnie Wear and Joe Guffey, a partnership which operated a used car lot in Cleveland, Tennessee under the trade name of J & D Auto Sales.[1] Haulers appealed, arguing (1) that Hunter was not entitled to summary judgment; (2) that the trial court erred in denying Haulers' motion for summary judgment; (3) that the trial court erred in allowing Hunter discretionary costs; and (4) that the trial court erred in not requiring the production of a statement given by Thompson to Hunter's counsel.

I. *Background*

The instant litigation was commenced on December 13, 1994. It followed the filing of the underlying tort action on September 6, 1994. The earlier suit was styled **Mike T. Hunter v.**

---

[1]The trial court also declared that Thompson was not an insured under the Haulers policy. Since there has been no appeal from this portion of the lower court's judgment, we do not find it necessary or appropriate to consider the correctness of that ruling.

*Damian V. Burke; Edwin Thompson, also known as Edward Thompson; and Donnie Wear and Joe Guffey, individually and doing business as J & D Auto Sales*.  It was also filed in the Bradley County Circuit Court.  For ease of reference, it will be referred to in this opinion as *Hunter v. Burke* or "the underlying tort action."

The case of *Hunter v. Burke* was tried to a jury. The trial judge in the instant case, the Honorable John B. Hagler, Jr., also presided at the trial of the underlying tort action. In that case, the jury returned a verdict for the plaintiff Mike T. Hunter[2] in the amount of $270,000.  The trial judge approved the verdict, and the defendants Damian V. Burke, Donnie Wear, and Joe Guffey appealed.  We affirmed the judgment, and the Supreme Court denied permission to appeal on December 22, 1997.  *See Hunter v. Burke*, C/A No. 03A01-9606-CV-00207, 1997 WL 170307 (Court of Appeals at Knoxville, April 11, 1997; petition for rehearing denied June 27, 1997).

## II.  *Hunter v. Burke*

Our opinion in *Hunter v. Burke*, *supra*, recites the relevant facts in that litigation:

> On the afternoon of June 3, 1994, Burke, who was then 18 years old, along with his friend, Edwin Thompson (Thompson), went to J&D Auto Sales, a used car lot owned and operated by Wear and Guffey.  Earlier that day, Burke and Thompson had been at Burke's house with two or three other individuals, smoking marijuana and drinking beer.  There is evidence that

---

[2]Mike T. Hunter and Michael T. Hunter are one and the same person.

3

Burke approached Guffey and asked to drive a 1971 Chevrolet Malibu. Guffey agreed. Burke and Thompson drove off the lot with the latter behind the wheel. Guffey did not accompany them.

After traveling a short distance, Thompson apparently realized that he was too impaired to drive. He then asked Burke to drive. Burke agreed, despite the fact that he too was under the influence of marijuana and alcohol.

Burke drove a few blocks, swerved into the oncoming lane of traffic, and struck Hunter, who was riding his bicycle. Burke stopped the car, and he and Thompson fled the scene. They were apprehended by the police shortly thereafter. Burke gave a statement admitting that he caused the accident.

*          *          *

Hunter subsequently brought suit against Burke, Thompson, Wear, and Guffey. At trial, Burke admitted responsibility for the accident and the trial court granted Hunter's motion for a directed verdict against him on the issue of liability. It granted the same motion as to Wear and Guffey, finding them vicariously liable for Burke's actions, due to the fact that Burke had been test-driving a vehicle owned by them at the time of the accident. During the court's jury instructions, Hunter moved for a voluntary nonsuit on the issue of punitive damages. The trial court granted the motion and consequently submitted the case to the jury only on the issues of compensatory damages, and whether Thompson was liable for negligently entrusting the vehicle to Burke. The jury found that Thompson was not liable. It awarded compensatory damages of $270,000 against the remaining three defendants. Expressly approving of the jury's verdict, the trial judge denied the defendants' motions for a new trial or remittitur.

*Id.*, 1997 WL 170307 at *3-5.

III.  *Standard of Review*

4

An appellate court, when reviewing a grant of summary judgment, must decide anew if judgment in a summary fashion is appropriate. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). We must affirm the grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56.04, Tenn.R.Civ.P.

In making our Rule 56 analysis, we are not bound by the trial court's reasoning. Summary judgment is a question of law. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Cowden*, 816 S.W. at 744. There is no presumption of correctness as to the result reached by the trial court. *Bain*, 936 S.W.2d at 622; *Cowden*, 816 S.W.2d 744.

IV. *Analysis*

The first two issues raised by Haulers require that we focus on the pertinent language of the policy of insurance issued by Haulers to Donnie Wear and Joe Guffey, doing business as J & D Auto Sales. The parties agree that these issues can be resolved with reference to the "Who is an Insured" provisions of the policy under Section II-Liability Coverage:

SECTION II-LIABILITY COVERAGE

A. COVERAGE

5

\*      \*      \*

1.  WHO IS AN INSURED

    a.  The following are "insureds" for covered "autos".

        (1)  You for any covered "auto".

        (2)  Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

             (a) The owner or anyone else from whom you hire or borrow a covered "auto".  This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

             (b) Your employee if the covered "auto" is owned by that employee or a member of his or her household.

             (c) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "auto" unless that business is

6

your "garage operations".

*(d) Your customers, if your business is shown in the Declarations as an "auto" dealership. However, if a customer of yours:*

*(i) Has no other available insurance (whether primary, excess or contingent),[3] they are an "insured" but only up to the compulsory or financial responsibility law limits where the cover*

---

[3]Burke had "no other available insurance."

> *ed
> "auto
> " is
> princ
> ipall
> y
> garag
> ed.*

\*    \*    \*

(Emphasis added).  The policy provides that Haulers' maximum liability for any one accident is $100,000.

The trial court held that the material facts regarding Haulers' coverage with respect to Burke's liability in **Hunter v. Burke** were undisputed.  It determined that Burke was driving a vehicle owned by Wear and Guffey at the time he struck Hunter's bicycle and that Burke was then driving with the actual or constructive permission of the owners of the car lot.  The court further concluded that the words "customer" and "customers", as used in the "Who is an Insured" part of the liability coverage of the policy, either did not apply to Burke or were ambiguous.  It held that Burke was therefore entitled to the full $100,000 of coverage.

On this appeal, Haulers makes a number of arguments as to why Hunter and Burke are not entitled to summary judgment and why it is entitled to summary judgment.  We believe there are really only two questions:

1. Did Burke have the car lot owners' permission to use their vehicle at the time of the accident?[4]

2. If so, what is the limit of Haulers' coverage as to the liability of Burke?

A. *Issue of Permission*

Haulers argues that Burke did not have its insureds' permission to drive their vehicle at the time of the accident; or, in the alternative, that there is a genuine issue of material fact with respect to permission that renders summary judgment inappropriate.

When **Hunter v. Burke**, *supra*, was appealed to this court, we held that Burke "had the permission of Guffey to test-drive the car." In view of this specific finding, can Haulers now re-litigate the issue of permission in this case? We hold that it cannot. The doctrine of collateral estoppel precludes a re-litigation of that issue in this case.

Collateral estoppel has been defined by the Supreme Court as follows:

> the doctrine of collateral estoppel or estoppel by judgment is an extension of the principal [sic] of *res judicata*, and is generally held to be applicable only when it affirmatively appears that the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a

---

[4]Haulers also argues that it is entitled to summary judgment (1) because its insureds' permission to drive was induced by fraud or misrepresentation; and (2) because Burke and Thompson exceeded the "scope of consent and permission." We find no evidence to support either position.

> different cause of action, if the
> determination of such issue in the former
> action was necessary to the judgment.

*Dickerson v. Godfrey*, 825 S.W.2d 692, 694 (Tenn. 1992)(citing

*Home Insurance Co. v. Leinart*, 698 S.W.2d 335, 336 (Tenn. 1985)

and other cases).  In another case, the Supreme Court stated that

> [c]ollateral estoppel operates to bar a
> second suit between the same parties *and
> their privies* on a different cause of action
> only as to issues which were actually
> litigated and determined in the former suit.

*Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459

(Tenn. 1995)(quoting *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn.

1989))(quoting *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn.

1987)) (emphasis added); or, as stated another way, the doctrine

> precludes re-litigation of *individual issues
> which were actually and necessarily
> determined* in a former action between the
> named parties or their privies on a different
> cause of action.

*Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 820 (Tenn.App.

1995)(emphasis in original).

The case of *Phillips v. General Motors Corp.*, 669

S.W.2d 665 (Tenn.App. 1984), contains the following explanation

of the concept of privity:

> Privity in the traditional sense meant mutual
> or successive relationship to the same rights
> of property, but various states have employed

10

> other definitions when used in the context of
> *res judicata* and collateral estoppel.
>
> *    *    *
>
> The Tennessee rule holds that privity as used
> in the context of *res judicata* does not
> embrace relationships between persons or
> entities, but rather [goes] to the subject
> matter of the litigation. ***Cantrell v.
> Burnett & Henderson Co.***, 187 Tenn. 552, 216
> S.W.2d 307 (1948).

*Id.* at 669. In another case, after finding that collateral estoppel was applicable to the facts before it, the Supreme Court noted that collateral estoppel was an extension of the doctrine of *res judicata,* and that "[p]rivity within the meaning of the doctrine of *res judicata* is privity as it exists in relation to the subject matter of the litigation." ***Harris v. St. Mary's Medical Center, Inc.***, 726 S.W.2d 902, 905 (Tenn. 1987).

In the instant case, it is clear that there was privity between Haulers and its insureds, Wear and Guffey. These parties had an identical interest "in relation to the subject matter" of the underlying tort action. *See* ***Harris***, 726 S.W.2d at 905. Wear and Guffey sought to avoid personal liability in the underlying tort action by showing that Burke did not have permission to drive their vehicle. By the same token, a lack of permission is at the core of Haulers' position in the instant case. If Burke did not have permission to drive, his liability to Hunter is not covered under the terms of Haulers' policy. Under the doctrine of collateral estoppel, Haulers is estopped from re-litigating the issue of whether Burke had the permission of the car lot owners since this issue was previously litigated in the

11

underlying tort action.  Since Wear and Guffey are bound by that decision, so is Haulers.  Thus, Haulers is bound by a decision that has been adversely decided to its position in this case.

### B.  *Coverage*

Haulers argues that, even if Burke had permission to drive the vehicle in question, the trial court erred in holding that the maximum limit of liability under the policy -- $100,000 -- applies to Burke's liability to Hunter, as determined in the underlying tort action.  Haulers points to paragraph A(1)(a)(2)(d)(i) of the liability coverage, which provides, in pertinent part, as follows:

> ...if a customer of yours [h]as no other available insurance (whether primary, excess or contingent), they are "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

Thus, Haulers claims that its maximum coverage for Burke's liability to Hunter in the underlying tort action is $25,000, the minimum individual limit of coverage under the Tennessee Financial Responsibility Law.  *See* T.C.A. § 55-12-102(12)(C)(ii).

The trial court held that the word customer "seems to be synonymous with a buyer or a purchaser."[5]  It concluded that, since Burke did not purchase the car that he was test-driving at the time of the accident, he was "no more a purchaser than a

---

[5]The word "customer" is not defined in the policy in the context of the provision under discussion.

prospective insured is an insured." It concluded that Burke was
a "mere 'prospective customer[].'" Hence, so the trial court
reasoned, paragraph A(1)(a)(2)(d)(i) of the liability section of
the policy did not encompass him within its terms.

In the alternative, the trial court concluded that the
"meaning of 'customers' is ambiguous and must, therefore, be
construed against the insurance company and in favor of the
insured," citing the case of *St. Paul Fire & Marine Ins. v.*
*Torpoco*, 879 S.W.2d 831 (Tenn. 1994). Thus, the trial court held
that, as construed in favor of the insured, Burke was a non-
customer who was driving with permission, and hence entitled to
the full $100,000 of coverage under the general "permission"
language of paragraph A(1)(a)(2).

It is axiomatic that "[i]nsurance contracts are subject
to the same rules of construction and enforcement as apply to
contracts generally." *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn.
1990); *see also Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706, 708
(Tenn.App. 1992); *Whaley v. Underwood*, 922 S.W.2d 110, 112
(Tenn.App. 1995). Therefore, generally speaking, courts must
enforce contracts as written, absent fraud or mistake. *Id*.
Words used in insurance contracts must be given their usual and
ordinary meaning. *Drexel Chemical Co. v. Bituminous Ins. Co.*,
933 S.W.2d 471, 477 (Tenn.App. 1996); *Gredig v. Tennessee Farmers*
*Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn.App. 1994); *Hill v.*
*Tennessee Rural Health Improvement Ass'n*, 882 S.W.2d 801, 802
(Tenn.App. 1994).

13

We must respectfully disagree with the trial court's reasoning. We find and hold that the word "customer," according to its usual and ordinary meaning, includes within its ambit someone who comes on a car lot for the purpose of test-driving a car. In ordinary parlance, one who is considering a purchase -- as was Burke -- is a customer whether that person actually consummates a purchase or not. This is particularly true in this case, given the context in which the word is used in the subject policy.

The policy provisions before us address coverage for the liability of one using a vehicle "own[ed], hire[d] or borrow[ed]" by J&D Auto Sales. The word "customer" must be viewed in this context. To construe the word "customer" to mean, or at a minimum to include, one who has already purchased a vehicle is inconsistent with the general focus of the liability section of the policy. Generally speaking, once an individual takes ownership of a vehicle, the previous owner -- in this case J&D Auto Sales -- no longer has a need for liability insurance since it no longer has any potential liability. The provision in question is designed to cover a "customer" *before* ownership passes; therefore, "customer" cannot be construed to address a user of a vehicle *after* ownership has passed.

If possible, we must construe a single word in a policy of insurance in a way that is consistent with other pertinent parts of the policy. *See **Rainey v. Stansell***, 836 S.W.2d 117, 119 (Tenn.App. 1992) ("All provisions of a contract should be

14

construed as in harmony with each other... so as to avoid repugnancy between the several provisions of a single contract.")

We find no ambiguity in the word "customer" *as used in the Haulers policy*.[6] We hold that the specific provisions of paragraph A(1)(a)(2)(d)(i) apply to Burke. It results that Burke, as a "customer", is limited to coverage of $25,000 with respect to his liability to Hunter in the underlying tort case. In so holding, we do not address the question of available coverage under the Haulers policy with respect to Hunter's judgment against Wear and Guffey. The instant case did not seek a declaration as to the coverage available to Wear and Guffey with respect to Hunter's suit against them. This issue is not before us and we do not decide it.

C. *Other Issues*

The trial court allowed discretionary costs to the appellee Hunter in the amount of $371.00, representing a portion of the cost of the transcript of the underlying tort action. That transcript was filed in the instant case. An award of such costs is subject to the discretion of the trial court. **Lock v. National Union Fire Ins. Co. of Pittsburgh**, 809 S.W.2d 483, 490 (Tenn. 1991). We find no abuse of that discretion.

---

[6]Customer is generally defined as "a person who purchases goods or services from another; buyer; *patron*." Webster's Universal College Dictionary 200 (1997 ed.)(emphasis added).

The last issue made by the appellant pertains to the trial court's refusal to require Hunter to produce a statement allegedly given by Thompson to Hunter's counsel. This statement is relevant to the issue of whether Burke had the permission of the car lot owners to drive their car at the time of the accident. Our finding that Haulers is collaterally estopped to raise this issue renders this question moot.

V. *Conclusion*

The trial court's judgment is modified to reflect that the limit of liability coverage applicable to Burke's liability to Hunter under the Haulers' policy is $25,000. In all other respects, the judgment of the trial court is affirmed. Exercising our discretion, we tax the costs on appeal one-half to the appellant and one-half to the appellee Hunter. This case is remanded for such further proceedings as may be necessary, consistent with this opinion, and for collection of costs assessed below, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Don T. McMurray, J.

16