**Opinion issued August 13, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-01064-CV

_____

## HANDS OF HEALING RESIDENTIAL TREATMENT CENTER, INC., Appellant

## V.

## JOHN HAVENAR, Appellee

---

**On Appeal from the County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 974802**

---

## MEMORANDUM OPINION

Appellant, Hands of Healing Residential Treatment Center, Inc. ("HOH"),

challenges the judgment of possession of real property, entered after a trial to the

county court at law, in favor of appellee, John Havenar, in his forcible-detainer

action against HOH. In six issues, HOH contends that the county court lacked jurisdiction to review Havenar's claims, it erred in admitting expert testimony, and the evidence is legally and factually insufficient to support its fact findings.

We vacate and dismiss in part, and affirm in part.

## Background

Havenar filed, in a Harris County justice court, a sworn complaint, seeking to evict HOH and all occupants from a house in Baytown (the "property"). In his complaint, Havenar, the owner of the property, asserted that HOH, the tenant under a lease executed on March 11, 2009, "should be evicted" because it had defaulted on the lease by failing to carry the required insurance coverage and was conducting professional counseling at the property in violation of the Certificate of Occupancy. The justice court entered a judgment of possession in favor of HOH, and Havenar appealed to the county court for a trial de novo.

HOH, a non-profit organization licensed as a General Residential Operation for the State of Texas, answered and filed a counter-petition, alleging retaliation and tortious interference with contract. It was operating at the property under a contract with the Texas Department of Family and Protective Services to care for disadvantaged and emotionally disturbed children. HOH explained that any change in location could cause it to lose its contract, and it noted that Havenar had worked as a counselor for HOH. After HOH terminated his employment, Havenar

2

began conducting unreasonable inspections of the property, looking for violations to evict HOH. The county court granted injunctive relief, restricting Havenar's access to the property, and it dismissed HOH's counterclaims for lack of jurisdiction.

Havenar then filed an amended petition, alleging that on January 10, 2010, while HOH was in possession of the property, "a pipe had burst due to a freeze," causing extensive damage to the property. And, under the terms of the lease, HOH was responsible for repairing the damage. Although HOH's insurer had estimated the cost of the repairs to be approximately $74,000, HOH had made less than $5,000 in repairs, "refused" to make all the necessary repairs, and failed to protect against mold growth. Havenar asserted that Baytown's ordinances prohibited any "medical treatment, including counseling, from taking place on the property," and HOH had continued to counsel residents at the property. Havenar sought possession of the property and attorney's fees.

At trial, Havenar testified that in 1996, when he and his wife, Denise, purchased the property, they had "replaced all the floorboards in the entire house," "re[done] the sheetrock and the flooring," and replaced "every piece of trim." He explained that under the terms of the lease, he was responsible for any repairs to the foundation, roof, and exterior walls and HOH was responsible for any repairs to "everything else." The county court admitted a copy of the lease into evidence.

3

In January 2010, when Havenar drove by the property, he saw a "huge monument of ice" and "water cascading from the property." He went inside the house and saw water in the foyer, living room, and kitchen, and coming down the ceilings from the sheetrock. He turned off the water and called the president of HOH, Victor Weetly, who assured Havenar that HOH's insurance would cover the damage. In May 2010, when Havenar visited the property to inspect the repairs, he noted that HOH had not removed any of the trim, but it had "cut around all the trim," cut pieces out of the sheetrock, and had just patched the holes with "piece[s] of sheetrock" and caulk.

In August 2010, Havenar sent to HOH a list of "deficiencies," noting that the sheetrock repair to the ceilings and walls was "unacceptable" because it had not been "taped, floated, and textured properly"; the kitchen ceiling had not been repaired and mold was present; damaged insulation in the attic had not been replaced; and the wood floors in the dining room, living room, and bedrooms had not been appropriately refinished and had been inappropriately "patched." Weetly responded in an email, which the trial court admitted into evidence, that all the repairs had been completed. However, in September 2010, Havenar discovered that HOH's insurer had denied coverage of the claim. And in December 2010, when Havenar visited the property with his contractor, they discovered mold when they "pulled a board away." The trial court admitted into evidence a mold

4

inspection report from Mold Inspection Services, dated December 17, 2010. The report details the presence in the property of "visible mold growth," "water damage," "flooring material retaining moisture," and "[a]ctively wet materials . . . [on] walls resulting from the leak above in the attic."

Denise testified about the renovations that she and Havenar had made to the property and its condition prior to leasing it to HOH. And the trial court admitted into evidence photographs of the property taken in early 2009, prior to HOH taking possession. When Denise inspected the property in May 2010, after the repairs had been completed by HOH, she noted that the repairs were "patchy," meaning that "little pieces" had been "cut out" of the sheetrock and wood floor. And she asserted that HOH did not repair the property to the same condition it was in when she and Havenar had leased it to HOH.

Tom McCartney, an adjuster with Vera Claim Incorporated, testified that HOH's insurer, Scottsdale Insurance Company, retained him to inspect the damages to the property after the water pipe had burst. He noted that the property is a 3000-square-foot "fourplex" that was constructed in 1948. McCartney explained that when he inspected the property on January 18, 2010, he found extensive "water damage from [a] freezing of pipes." He noted that a water line in the attic had frozen and burst, a "continuous rush of water" had run into a bedroom, and the water had "spread out" along the second floor and "leaked down

5

to the first floor." The drywall on the ceilings and walls had "failed," ceilings had "fallen," and the wood flooring and subflooring were "cupping." McCartney further noted that because water had been standing on the floors for seven days, they were "non-salvageable." He estimated the value of the loss to the property to be $74,000.00, and the county court admitted his detailed estimate into evidence.

Mervin Elmore, a general contractor, testified that on March 28, 2012, he inspected the property with Havenar. He noted that although he is not a licensed contractor or a professional inspector, he has been in the remodeling business for forty-three years. Elmore determined that the wood flooring was warped, insulation had not been replaced, and the sheetrock had been visibly patched.

Weetly testified that at the time the water pipe burst, HOH had possession of the property, but was not yet occupying it. He admitted that HOH was "responsible for all of the repairs to the building[,] other than the exterior and roof." And when its insurer denied coverage, HOH hired Jose Rodriguez of Tampico Remodeling to do the repairs, but he did not know whether Ramirez was licensed or insured. Weetly explained that he and Rodriguez had gone through the property and determined the types of repairs needed. However, regarding the flooring, there was only "one plank" of the wood floor that was "buckling," and it was replaced. He acknowledged that HOH "didn't do anything with the floors." Weetly noted that when Havenar had visited the property, after the repairs were

completed, he said that everything "looked good." The repairs, completed in April 2010, cost $4,300. And the county court admitted into evidence Rodriguez's invoice, dated March 17, 2010, which lists each of the repairs made: "Fix plumbing leak in attic. Remove damaged sheetrock and replace. Treat moisture. Tape, float, [and] texture. Paint damaged areas only. Replace damaged laminate. Replace bathroom [and] closet doors." The county court also admitted into evidence photographs taken of the property after the repairs.

Terry Hawkins, a property manager and experienced construction supervisor, testified that HOH retained him to inspect the property. On April 21, 2011, he "walked the house," took pictures, and documented his findings, which were admitted into evidence at trial. He concluded that the repairs were "sufficient," and he attributed the defects at issue to the age of the property.

After the county court found that HOH had failed to properly and adequately make repairs and maintain the premises, it further found that HOH's failures constituted a breach of the lease agreement. It issued findings of fact and conclusions of law, rendered judgment of possession in favor of Havenar, and awarded him $21,000 in attorney's fees.[1] On December 9, 2013, HOH vacated the property, and the lease expired on its own terms on February 28, 2014.

---

[1]    HOH, at trial, stipulated to the amount of attorney's fees to be awarded to Havenar in the event that he prevailed.

**Mootness**

As a preliminary matter, Havenar argues that HOH's appeal is moot because the lease has expired. Appellate courts lack jurisdiction to decide moot controversies and render advisory opinions. *See Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). A justiciable controversy between the parties must exist at every stage of the legal proceedings, including the appeal, or the case is moot. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). An appeal from a forcible-detainer judgment becomes moot if the defendant is no longer in possession of the property, unless it holds and asserts "a potentially meritorious claim of right to current, actual possession." *Marshall v. Hous. Auth. of City of San Antonio*, 198 S.W.3d 782, 787 (Tex. 2006).

It is undisputed that HOH has vacated the premises, and its only claim to possession would arise under the lease, which has expired. Because HOH does not hold and assert "a potentially meritorious claim of right to current, actual possession," its appeal is moot as to the portion of the judgment awarding possession of the premises to Havener. *See id.* (holding appeal in forcible detainer action moot because lease expired and tenant presented no basis for claiming right to possession after expiration date).

However, an entire case only becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome. *See Allstate Ins. Co.*

8

*v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005). Here, the county court's judgment requires HOH to pay Havenar's attorney's fees, and a dispute over attorney's fees is a live controversy that will keep the entire case from becoming moot. *See Briones v. Brazos Bend Villa Apartments*, 438 S.W.3d 808, 813 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

A landlord who prevails in a forcible detainer action is entitled to recover reasonable attorney's fees from the tenant if the parties' written lease entitles the landlord to recover such fees. TEX. PROP. CODE ANN. § 24.006(b) (Vernon 2014); *see also* TEX. R. CIV. P. 510.11 (providing attorney's fees include those incurred in both justice and county courts) (formerly Texas Rule of Civil Procedure 752). Under the terms of the lease between Havenar and HOH, "[a]ny person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, reasonable attorney's fees, and all other costs of litigation from the nonprevailing party." Thus, whether Havenar is "the prevailing party" for purposes of recovering attorney's fees remains a live controversy. *See Daftary v. Preston Market Square, Ltd.*, 399 S.W.3d 708, 711–12 (Tex. App.—Dallas 2011, pet. dism'd).

## Jurisdiction

In its first issue, HOH argues that the county court "did not have jurisdiction to review" Havenar's claims concerning HOH's failure to repair the property

9

because they "were not pled and adjudicated at the justice court level." HOH asserts that Havenar, in his original petition in the justice court, sought to evict it for failing to maintain certain insurance coverage. And the justice court ruled that the alleged violations did not constitute a material breach of the lease. Havenar then, in his first amended petition in the county court, sought to evict HOH for failing to repair damage to the property from a burst water pipe.

Justice courts have original jurisdiction over forcible-detainer suits. *See* TEX. PROP. CODE ANN. § 24.004 (Vernon 2014); *see also* TEX. GOV'T CODE ANN. § 27.031(a)(2) (Vernon 2004). A party who is dissatisfied with a justice-court judgment in such a suit may appeal to a county court for a trial de novo. *See* TEX. R. CIV. P. 510.9. It is well-settled that perfection of an appeal to a county court for a trial de novo vacates and annuls the judgment of the justice court; the county court does not review the justice court's action. *See Villalon v. Bank One*, 176 S.W.3d 66, 69–70 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

Pursuant to the law in effect at the time that the underlying suit was filed:

> Either party may plead any new matter in the county or district court which was not presented in the court below, but no new ground of recovery shall be set up by the plaintiff, nor shall any set-off or counterclaim be set up by the defendant which was not pleaded in the court below. The pleading thereof shall be in writing and filed in the cause before the parties have announced ready for trial.

TEX. R. CIV. P. 574a (repealed 2013). Thus, for purposes of an appeal from a justice court, the parties could raise any "new matter" in the county court that was

10

not presented in the justice court, but they were prohibited from raising a "new ground of recovery." *See id.*; *see, e.g., Berezoski v. Drake Dev. Co.*, No. 14-96-00768-CV, 1997 WL 665886, at *2 (Tex. App.—Houston [14th Dist.] Oct. 23, 1997, no pet.) (mem. op., not designated for publication) (considering claim for unpaid rents not raised in justice court). A "new ground of recovery" pertains to an "allegation that serves as a basis for obtaining additional sums of money or other forms of affirmative relief not asserted at the original trial." *Shedrock v. Texas Dep't of Pub. Safety*, 699 S.W.2d 676, 678 (Tex. App.—San Antonio 1985, no writ); *see also McSpadden v. Eads*, 163 S.W. 634, 634 (Tex. Civ. App.—Amarillo 1914, no writ) ("Either party may plead any new matter on appeal to the county court, though it was not presented in the justice court, so long as no new cause of action is set up by such amended pleading.").

In support its assertion that the county court "did not have jurisdiction to hear claims and facts that were not alleged at the justice court level," HOH relies on *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 434 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In *Nguyen*, this Court explained that, in forcible-detainer actions, justice and county courts lack jurisdiction to adjudicate claims beyond the right to immediate possession. *See id.* (citing *Krull v. Somoza*, 879 S.W.2d 320, 322 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding damage claims related to maintaining or obtaining possession of premises may be joined with

11

detainer action and litigated in county court; however, damages for other causes of action (i.e., wrongful termination) not recoverable in forcible-detainer action)). We held that the county court lacked jurisdiction to consider Nguyen's tort claims because none of them concerned the right to immediate possession, or constituted an attempt to collect rent, and she did not expressly limit her damages to that "suffered for withholding or defending possession of the premises during the pendency of the appeal." *Id*. at 435–36.

Here, in contrast, Havenar sought the same relief in both the justice and county courts, i.e., immediate possession of the premises, based on a breach of the lease, and his attorney's fees. *See* TEX. R. CIV. P. 510.11; *Nguyen*, 229 S.W.3d at 434. He did not seek damages. Although Havenar amended his pleadings, alleging additional violations of the lease, and presented new evidence in trial, he did not assert a new ground of recovery in the county court. *Shedrock*, 699 S.W.2d at 678. Accordingly, we hold that the county court had jurisdiction over Havenar's claims.

We overrule HOH's first issue.

**Sufficiency of the Evidence**

In its fourth and fifth issues, HOH argues that the evidence is legally insufficient to support the county court's finding that it materially breached the lease because Havenar presented "no evidence at trial to show that he was deprived

12

of any benefit he reasonably expected." In its sixth issue, HOH argues that the evidence is legally and factually insufficient to support certain specific fact findings of the county court regarding a breach of the lease because the "majority of the findings were supported by little if any <u>admissible</u> evidence at trial."

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *See Merry Homes, Inc. v. Chi Hung Luu*, 312 S.W.3d 938, 943 (Tex. App.—Houston [1st Dist.] 2010, no pet.). When a reporter's record has been filed, findings of fact are not conclusive and are binding only if they are supported by the evidence. *See HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.). We review the sufficiency of the evidence supporting a trial court's findings of fact under the same standards applicable to a review of a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

When a party challenges legal sufficiency relative to an adverse finding on which it did not bear the burden of proof, it must show that no evidence supports the finding. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). We will sustain a legal-sufficiency or "no-evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact

13

is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In conducting a legal-sufficiency review, a "court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it." *Id*. at 822. The term "inference" means,

> [i]n the law of evidence, a truth or proposition drawn from another which is supposed or admitted to be true. A process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved. . . .

*Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 400 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.) (quoting BLACK'S LAW DICTIONARY 700 (5th ed. 1979)). For a factfinder to infer a fact, "it must be able to deduce that fact as a logical consequence from other proven facts." *Id*.

If there is more than a scintilla of evidence to support the challenged finding, we must uphold it. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc*., 960 S.W.2d 41, 48 (Tex. 1998). "[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). However, if the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then factfinders must be allowed to do so.

14

*City of Keller*, 168 S.W.3d at 822; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *City of Keller*, 168 S.W.3d at 822.

When an appellant challenges the factual sufficiency of the evidence on an issue, we view all of the evidence in a neutral light and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). The trial court is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *See Zenner v. Lone Star Striping & Paving L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although a trial court's conclusions of law may not be challenged for factual sufficiency, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.* If we determine that a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Id.*

15

Here, the county court's pertinent findings of fact and conclusions of law include that HOH was responsible under the lease for repairs to "all aspects of [the property], other than the roof and the exterior"; a water pipe froze and then burst, causing water damage to the interior of property; McCartney estimated that $74,000 in damages had occurred; Havenar notified HOH of the repairs required to comply with the lease; more than 10 days passed without HOH having made the repairs; and HOH's failure to repair constituted a breach of the lease. And the county court concluded that HOH's right to possession of the property terminated because it had defaulted on the lease.

Weetly did testify that he hired Rodriguez to make the repairs, all of which were completed in April 2010 and cost $4,300, and the county court admitted into evidence Rodriguez's invoice, listing each of the repairs that he made. Rodriguez's invoice lists the following repairs: "Fix plumbing leak in attic. Remove damaged sheetrock and replace. Treat moisture. Tape, float, [and] texture. Paint damaged areas only. Replace damaged laminate. Replace bathroom [and] closet doors." Although Weetly acknowledged that HOH "didn't do anything with the floors," he explained that there was only "one plank" in the wood floor that was "buckling" and it was replaced. And the county court also admitted into evidence photographs of the property taken after the repairs.

However, the record further shows that Weetly admitted that HOH was "responsible for all of the repairs to the building[,] other than the exterior and roof." The lease provides that if HOH "fails to repair" an item for which it is responsible within ten days after Havenar gave written notice of the needed repair, Havenar may "exercise [his] remedies" under the default provision. And under the default provision, Havenar "may terminate" HOH's right to occupy the property.

Moreover, McCartney testified to the extent of the damages to the property that occurred in January 2010. He explained that a water pipe burst in the attic, a "continuous rush of water" ran into a bedroom, and the water "spread out" along the second floor, "leak[ing] down to the first floor." The drywall on the ceilings and walls had "failed," ceilings had "fallen," and the wood flooring and subflooring were "cupping." McCartney noted that for seven days the water had been standing on the floors, which were "non-salvageable." He estimated that $74,000 in damages had been incurred, and the county court admitted his detailed estimate into evidence.

Havenar testified that he inspected the property in May 2010. He saw that HOH or its contractor had "cut around all the trim," cut pieces out of the sheetrock, and had just patched the holes with "piece[s] of sheetrock" and caulk. In August 2010, Havenar sent a notice of "deficiencies" to Weetly, who responded that "everything [was] already done." In December 2010, Havenar visited the property

17

with his contractor and found mold. And the report from a mold inspection conducted on December 17, 2010 revealed "visible mold growth," "water damage," "floor material . . . retaining moisture," and "[a]ctively wet materials . . . [on] walls resulting from the leak above in the attic."

Denise also testified that she inspected the property after the completion of the repairs, noting that they were "patchy," meaning that "little pieces" had been "cut out" of the wood floor and sheetrock. She explained that HOH did not repair the property to the same condition that it had been in when she and Havenar leased it to HOH. And the county court admitted into evidence photographs of the property taken in early 2009, prior to HOH taking possession.

From this evidence, the county court could have reasonably found that HOH had breached the lease by failing to make necessary repairs. The Texas Supreme Court has held that the "subject of house repairs" is not "one for experts or skilled witnesses alone." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *see also U.S. Fire Ins. Co. v. Lynd Co.*, 399 S.W.3d 206, 217 (Tex. App.—San Antonio 2012, pet. denied) (noting scope of property damage may constitute matter of "personal observation and common sense" within scope of lay testimony).

The evidence presented at trial also establishes that HOH's breach was material. A party is released from further obligation under a contract only if the other party materially breached. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134

18

S.W.3d 195, 198 (Tex. 2004). In determining whether a breach is material, we consider:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances; [and]
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id.* at 199 (citing RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981)). Here, the evidence supports the county court's findings that the property suffered $74,000 in damages and mold has since been discovered. Further, insurance coverage has been denied, and HOH, in its brief, concedes that Havenar "cannot be adequately compensated for the alleged violations." *See id.*

We conclude that there is more than a scintilla of evidence to support the county court's finding that HOH defaulted on the lease. *See City of Keller*, 168 S.W.3d at 810. We further conclude that the evidence supporting the county court's finding that HOH defaulted on the lease is not so weak as to make the finding clearly wrong or manifestly unjust. *See Francis*, 46 S.W.3d at 242. Accordingly, we hold that Havenar is "the prevailing party" in the forcible-detainer

action for purposes of recovering attorney's fees. *See* TEX. PROP. CODE ANN. § 24.006(b); TEX. R. CIV. P. 510.11.

We overrule HOH's fourth issue, fifth issue, and the portion of its sixth issue concerning its breach of the lease by failing to repair the property. We need not reach the portions of HOH's sixth issue concerning the sufficiency of the evidence supporting the trial court's findings that HOH also breached the lease by failing to maintain water heaters and provide adequate pest control at the property.

## Expert Witness

In its third issue, HOH argues that the county court erred in allowing Melvin Elmore to testify as Havenar's expert because he was not qualified to testify regarding "whether the repairs made after the water pipe accident[,] which included but [were] not limited to removing and installing sheetrock and insulation, taping, floating, and texturizing the walls and ceilings[,] were made in a workmanlike manner." HOH asserts that Elmore's testimony was neither relevant nor reliable.

Even if a trial court errs in admitting certain testimony, such an error is rendered harmless and deemed waived if the objecting party allows the same or similar evidence to be admitted without objection. *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004); *Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 557 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 972

20

S.W.2d 35 (Tex. 1998). Here, HOH did not object to Havenar's testimony that HOH had "cut around all the trim," cut pieces out of the sheetrock, and had merely patched the holes with "piece[s] of sheetrock" and caulk. *See McGalliard*, 722 S.W.2d at 697 (holding subject of house repairs within scope of lay testimony). Further, the trial court admitted, without objection, the mold inspection report detailing the presence, eight months after HOH had completed repairs, of "[a]ctively wet materials . . . [on] walls resulting from the leak above in the attic." Moreover, Weetly himself testified that Ramirez "didn't do anything with the floors."

Even if we were to conclude that the trial court erred in admitting Elmore's testimony, any such error would be harmless because the substance of Elmore's testimony was cumulative of other evidence that was admitted without objection. *See Malone*, 916 S.W.2d at 557.

We overrule HOH's third issue.

**Additional Evidence**

In its second issue, HOH argues that the county court erred in allowing Havenar, after the close of his evidence, to "reopen his case twice to cure defects in his pleading and to add evidence to support facts and claims alleged by him for the first time" because this "conduct violates all rules of fair play and was detrimental to [HOH] in this case." HOH asserts that the county court allowed Havenar to

21

"reopen his case" after he had realized that he had not verified his first amended petition. The record shows that at the close of his case-in-chief in the county court, Havenar's counsel stated: "Subject to our filing an amended petition with verification, [Havenar] would rest." Immediately after, Havenar orally verified his first amended petition. In its brief on appeal, HOH asserts that although "this alone would be not be . . . sufficient to conclude that the [county] court abused its discretion," this, "coupled with the second time" that Havenar "was permitted to reopen his case is sufficient to show a clear abuse of discretion."

The record shows that Havenar, after resting his case and during the presentation of testimony by a defense witness, asked the county court to consider allegations in a second amended petition that had not yet been filed regarding the maintenance of water heaters at the property and the presence of rodent droppings. HOH asserts that these allegations "were not part of any discovery" and operated as a surprise to HOH. Having concluded that the county court's findings regarding a breach of the lease are supported on other grounds, however, we do not reach this issue.

## Conclusion

We vacate the portion of the county court's judgment awarding Havenar possession of the premises and dismiss this portion of the case as moot. We affirm the portion of the county court's judgment awarding Havenar attorney's fees.


Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Huddle