# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 5, 2022 Session

# ERNEST FALLS ET AL. v. MARK GOINS ET AL.

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Davidson County**
**No. 20-0704-III      Ellen Hobbs Lyle, Chancellor**

———————————————————

**No. M2020-01510-SC-R11-CV**

———————————————————

In this appeal, we consider the interplay and applicability of two statutes that relate to suffrage rights of Tennessee residents previously convicted of infamous crimes in other states. Although the Tennessee Constitution recognizes the importance of the right of its residents to vote, the Constitution also allows the General Assembly to restrict the right of a person to vote "upon a conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction." Tenn. Const. art. I, § 5. Ernest Falls, a resident of Tennessee since 2018, was convicted of involuntary manslaughter in Virginia in 1986, an infamous crime under the laws of Tennessee. In 2020, Mr. Falls was granted clemency in Virginia by then-Governor Ralph Northam. The grant of clemency reinstated Mr. Falls' rights of citizenship in Virginia, including his right to vote. Subsequently, Mr. Falls attempted to register to vote in Grainger County, Tennessee, in June of 2020. The Grainger County Election Commission denied his restoration of voting rights request and cited "Incomplete/Insufficient Document(s)" as the reasoning for the denial. Mr. Falls and a co-plaintiff, who was left off the voter rolls under similar circumstances, filed a lawsuit in the Chancery Court for Davidson County, arguing that Tennessee Code Annotated section 2-19-143(3) requires the state to re-enfranchise persons convicted of out-of-state infamous crimes as soon as said persons are "pardoned or restored to the rights of citizenship by the governor or other appropriate authority of such other state." Tenn. Code Ann. § 2-19-143(3) (2014). Respondents, three public employees sued in their official capacity, countered that Mr. Falls also is required to comply with requirements set forth in another statutory provision, Tennessee Code Annotated section 40-29-202, which requires that persons convicted of infamous crimes pay outstanding court costs, restitution, and child support obligations before they can be re-enfranchised. Tenn. Code Ann. § 40-29-202 (2018). The Chancery Court granted summary judgment in favor of the three state officials, and the Court of Appeals affirmed the grant of summary judgment with Mr. Falls acting as the sole remaining plaintiff. Like the Court of Appeals, we affirm the grant of summary judgment

and conclude that, in order to regain the right of suffrage in Tennessee, Mr. Falls and other similarly situated individuals must comply with both section 2-19-143(3) and the additional requirements set forth in section 40-29-202.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which ROGER A. PAGE, C.J., and HOLLY KIRBY, J., joined. SHARON G. LEE, J., filed a dissenting opinion. SARAH K. CAMPBELL, J., not participating.

William L. Harbison, Lisa K. Helton, and Christopher C. Sabis, Nashville, Tennessee, and Danielle Lang and Blair Bowie, Washington D.C., for the appellant, Ernest Falls.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Janet M. Kleinfelter, Deputy Attorney General; and Alexander S. Rieger, Senior Assistant Attorney General, Nashville, Tennessee, for the appellees, Mark Goins, in his official capacity as Coordinator of Elections for the State of Tennessee, Tre Hargett, in his official capacity as Secretary of State for the State of Tennessee, and Herbert H. Slatery III, in his official capacity as the Attorney General for the State of Tennessee.

Angela Bergman, Nashville, Tennessee, and Christopher J. Climo and A.J. Bolan, Washington, D.C., for the amicus curiae, League of Women Voters of Tennessee.

Steven J. Mulroy, Memphis, Tennessee, and Joshua Stanton, Nashville, Tennessee, for the amici curiae, Tennessee Law Professors, Arlene Amarante, Maha Ayesh, Mohamed Fazier, Demetria Frank, Donna Harkness, David Hudson, Susan L. Kay, Daniel Kiel, Katy Ramsey Mason, Steven Mulroy, David Romantz, Willie Santana, Daniel M. Schaffzin, Kevin M. Stack, Joshua Stanton, Cara Suvall, and Stevie Swanson.

**OPINION**

## I. FACTUAL AND PROCEDURAL HISTORY

Tennessee resident Ernest Falls ("Mr. Falls") brings this appeal as a challenge to the Grainger County Administrator of Elections' denial of his attempted voter registration in 2020. In this appeal, we address important questions of statutory interpretation and, more specifically, the interplay between two Tennessee statutes that impose reinstatement requirements for those who have forfeited their right of suffrage as a result of an out-of-state criminal conviction.

Mr. Falls was convicted of involuntary manslaughter in Virginia in 1986, an infamous crime under Tennessee law.[1] More recently, he was granted individualized clemency in the Commonwealth of Virginia by then-Governor Ralph Northam in February 2020.[2] In accordance with Virginia law, Mr. Falls' rights of citizenship, including his right to vote, were restored in Virginia upon the grant of clemency. Mr. Falls moved to Tennessee in 2018, two years before the restoration of his voting rights took effect in Virginia. He did not dispute at the trial court level that he was legally disenfranchised at the time he moved to Tennessee.

After his grant of clemency in Virginia, Mr. Falls attempted to register to vote in Tennessee in June 2020, prior to that year's primary and general elections. When he sought to register, Mr. Falls disclosed his out-of-state conviction and verified that his rights subsequently had been restored in Virginia. The Grainger County Election Commission ultimately denied Mr. Falls' restoration of voting rights request, citing "Incomplete/Insufficient Document(s)" as the basis for the denial.

_____

[1] Since May 18, 1981, all crimes deemed felonies under Tennessee law have been considered "infamous crimes." May v. Carlton, 245 S.W.3d 340, 345 (Tenn. 2008) (citing Tenn. Code Ann. § 40-20-122 (1991)).

[2] The document restoring Mr. Falls' rights reads as follows:

COMMONWEALTH of VIRGINIA

Executive Department

TO ALL WHOM THESE PRESENTS SHALL COME – GREETINGS

WHEREAS, Ernest L. Falls after being convicted and sentenced for crime(s) committed prior to January 14, 2020, when the Executive completed review of the particulars of the individual's case; and

WHEREAS, Ernest L. Falls, by reason of conviction(s), suffers political disabilities, to wit denial of the right to vote, to hold public office, to serve on a jury, to be a notary public and to ship, transport, possess or receive firearms; and

WHEREAS, it appears that Ernest L. Falls has rejoined society free from state supervision and it seems appropriate to the Executive to remove certain of those political disabilities by restoring the right to vote, hold public office, serve on a jury, and to be a notary public;

NOW, THEREFORE, I, Ralph S. Northam, Governor of the Commonwealth of Virginia, by virtue of the authority vested in me, do hereby remove the political disabilities, except the ability to ship, transport, possess or receive firearms, under which Ernest L. Falls labors by reason of conviction as aforesaid, and do hereby restore the rights to vote, hold public office, serve on a jury, and to be a notary public.

On July 21, 2020, Mr. Falls and a similarly situated co-plaintiff, Arthur Bledsoe,[3] filed a Verified Complaint for Declaratory and Injunctive Relief in Davidson County Chancery Court. The Complaint named three defendants—Mark Goins, the Tennessee Coordinator of Elections; Tre Hargett, the Tennessee Secretary of State; and Herbert Slatery, III, the then-Tennessee Attorney General (collectively, the "State Officials"), all of whom were sued in their official capacities as public employees.

Mr. Falls sought from the trial court a declaration that "[Mr. Falls] and those similarly situated with out-of-state convictions who have had their civil rights restored by the state of their conviction are eligible to vote." Mr. Falls argued that, pursuant to Tennessee Code Annotated section 2-19-143, his right to vote in Tennessee had been automatically restored at the moment the right was restored in Virginia. Section 2-19-143 is a statutory provision that "govern[s] the exercise of the right of suffrage for those persons convicted of [] infamous crime[s]." Tenn. Code Ann. § 2-19-143 (2014). Mr. Falls further requested a temporary and permanent injunction (1) ordering the State Officials to place Mr. Falls on the voter rolls and issue him a voter registration card, (2) ordering the State Officials to process voter registration applications of other similarly situated individuals, and (3) enjoining the State Officials from denying voter registration applications for similarly situated applicants in the future.

In an Order filed on July 31, 2020, the trial court denied Mr. Falls' motion for a temporary injunction related to the August 6, 2020 election. Mr. Falls subsequently filed a motion for summary judgment on August 21, 2020, asserting that his constitutional rights had been violated based on "an erroneous interpretation of Tennessee law." The State Officials countered that Mr. Falls' rights had not been restored in Tennessee because Mr. Falls had not complied with additional re-enfranchisement provisions set forth in Tennessee Code Annotated section 40-29-202. The State Officials argued that, in accordance with that statutory provision, Mr. Falls' ability to obtain a voter registration card was contingent upon proof of payment of any outstanding court costs, restitution, and child support obligations.[4] See Tenn. Code Ann. § 40-29-202 (2018). Because Mr. Falls had not provided such evidence, the State Officials asserted that Mr. Falls' voter registration application was properly denied.

---

[3] Arthur Bledsoe did not join Mr. Falls' appeals beyond the trial court level. As a result, today's opinion will focus only on Mr. Falls' claims.

[4] As noted by the Court of Appeals, the record does not provide any evidence that Mr. Falls owes any fees, restitution, or child support. Nevertheless, it is undisputed that he failed to provide evidence proving that he does not owe any such financial obligation. Falls v. Goins, No. M2020-01510-COA-R3-CV, 2021 WL 6052583, at *1 n.1 (Tenn. Ct. App. Dec. 21, 2021), perm. app. granted, (Tenn. June 9, 2022).

Ultimately, on October 6, 2020, the trial court denied Mr. Falls' motion for summary judgment and instead granted summary judgment to the State Officials. The trial court concluded that "[r]equiring [Mr. Falls] to comply with the laws of this state, including complying with child support obligations, restitution orders, and other court orders, is both rational and constitutional."

Upon direct appeal, the Court of Appeals affirmed the judgment of the trial court. Falls v. Goins, No. M2020-01510-COA-R3-CV, 2021 WL 6052583, at *5 (Tenn. Ct. App. Dec. 21, 2021). The intermediate appellate court noted in its opinion that it could not "put Tenn. Code Ann. [section] 2-19-143 into a silo and ignore subsequent legislative enactments regarding re-enfranchisement," and ultimately held that "the requirements of Tenn. Code Ann. [sections] 40-29-201 to -205 supplement the provisions of Tenn. Code Ann. [section] 2-19-143 by providing additional requirements for the reinstatement of voting rights for convicted felons regardless of their state of conviction." Id. Mr. Falls appealed the decision in accordance with Rule 11 of the Tennessee Rules of Appellate Procedure. This Court granted that appeal on June 9, 2022 and heard oral arguments as part of the October 5, 2022 docket in Nashville, Tennessee.

## II. ANALYSIS

The parties characterize the issue before our Court differently. Mr. Falls asks our Court to address whether he has been unlawfully disenfranchised under article I, section 5 of the Tennessee Constitution and Tennessee Code Annotated section 2-19-143(3). He has requested that this Court reverse the decision of the Court of Appeals and conclude that "he is not deprived of the right to vote by any Tennessee law, and . . . he does not need to restore [his] right to register and cast a ballot." Conversely, the State Officials reiterate their position that Mr. Falls had an "obligation to comply with the requirements in Tenn. Code Ann. [section] 40-29-202(b)" to regain his right to vote.

Perhaps the most proper issue statement was set forth by the Court of Appeals, which stated simply that "[t]he central question in this appeal is whether, pursuant to Tenn. Code Ann. [section] 2-19-143(3), Mr. Falls was immediately re-enfranchised in Tennessee when the Governor of Virginia restored his Virginia citizenship rights in 2020, or whether he is subject to the additional preconditions to re-enfranchisement established by Tenn. Code Ann. [section] 40-29-202(b) and (c)." Falls v. Goins, 2021 WL 6052583, at *3. Regardless of the manner in which the issue is phrased, it is one of first impression for the appellate courts of our state.

Ultimately, we agree with the position of the State Officials and the Court of Appeals and affirm the intermediate appellate court's decision. We note that, under the facts of this case, Mr. Falls' citizenship and voting rights were not restored in Virginia until

after he had established residency in Tennessee. We limit the scope of our analysis to these facts and these facts only. We express no opinion as to the outcome of a hypothetical case in which a person convicted of an infamous crime in another state regains citizenship and voting rights in that person's state of prosecution before establishing residency and attempting to register to vote in Tennessee.

## A. Standard of Review

A lower court's decision to grant summary judgment is a question of law that is reviewed *de novo* with no presumption of correctness. See, e.g., Harris v. Haynes, 445 S.W.3d 143, 146 (Tenn. 2014) (citing Tenn. R. Civ. P. 56.04; Thompson v. Memphis City Schs. Bd. Educ., 395 S.W.3d 616, 622 (Tenn. 2012)). Thus, our Court is obliged to address whether the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. Parker v. Holiday Hosp. Franchising, Inc., 446 S.W.3d 341, 346 (Tenn. 2014) (citing Hughes v. New Life Dev. Corp., 387 S.W.3d 453, 471 (Tenn. 2012)). Rule 56 dictates that summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

Here, there are no disputes regarding the facts of the case. Instead, the parties disagree as to the manner in which this Court should interpret statutes relevant to these facts. Nevertheless, statutory interpretation is an issue of law which may be properly addressed and resolved on summary judgment. See Najo Equip. Leasing, LLC v. Comm'r of Revenue, 477 S.W.3d 763, 766 (Tenn. Ct. App. 2015), perm. app. denied (Tenn. Oct. 16, 2015). Because issues of statutory interpretation are questions of law, they are reviewed by our Court *de novo* with no presumption of correctness. Stewart v. State, 33 S.W.3d 785, 791 (Tenn. 2000); Johnson v. Hopkins, 432 S.W.3d 840, 844 (Tenn. 2013).

## B. Suffrage Under the Tennessee Constitution and Subsequent Legislative Enactments

The right to suffrage has long been held in high priority in our state. One need look no further than article I of the Tennessee Constitution to recognize that this principle holds true. Tenn. Const. art. I, § 5. However, the right to suffrage is qualified, not absolute. See id. Section 5 reads, in the relevant portion, that "the right of suffrage . . . shall never be denied to any person entitled thereto, *except* upon a conviction by a jury of some *infamous crime*, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction." Id. (emphasis added).

In Tennessee, a conviction for any felony results in "immediate[] disqualifi[cation] from exercising the right of suffrage." Tenn. Code Ann. § 40-20-112 (2018). It follows

that crimes that are felonies under the laws of this state are classified as "infamous crimes" in the context of the right of suffrage. Section 40-20-112 acts to bar those convicted of infamous crimes in Tennessee from voting but does not apply to persons convicted of felonies in other states. See Burdine v. Kennon, 209 S.W.2d 9, 10 (Tenn. 1948). However, the authority of the legislature to bar those convicted of infamous crimes from voting does extend to those infamous crimes prosecuted in other jurisdictions, and the legislature has exercised its power to do so. See Tenn. Code Ann. § 2-19-143(2)–(3). Specifically, Tennessee does not permit one convicted of "a crime or offense which would constitute an infamous crime under the laws of [Tennessee]" to vote or register to vote in elections within the state unless the person convicted of such a crime or offense (1) "has been pardoned or restored to the rights of citizenship by the governor or other appropriate authority of such other state," (2) has seen a full restoration of his rights of citizenship in accordance with the laws of the state of conviction, or (3) has seen a full restoration of his rights of citizenship in accordance with the laws of Tennessee.[5] Tenn. Code Ann. § 2-19-143(3).

In 2006, our General Assembly enacted additional provisions relating to voting rights.[6] Tennessee Code Annotated section 40-29-201 reads that its "provisions and procedures . . . shall apply to and govern restoration of the right of suffrage in [Tennessee] to *any person* who has been disqualified from exercising that right by reason of a conviction in any state or federal court of an infamous crime." Tenn. Code Ann. § 40-29-201(a) (2018) (emphasis added). Further, section 40-29-202 dictates that, if a person intends to "apply for a voter registration card and have the right of suffrage restored," it is incumbent upon that person to prove payment of restitution, court costs, and that said person "is current in all child support obligations." Tenn. Code Ann. § 40-29-202(b)–(c).

It is clear that, under some circumstances, our legislature has sought to provide recourse for those deprived of the right to vote based on conviction of an infamous crime. It is less clear what those precise circumstances are, and we seek to answer that question by interpreting the statutes at issue in this case.

## C. Statutory Interpretation and Construction

When our Court is tasked with construing statutes, "[t]he most basic principle" is that we seek to "ascertain and give effect to the legislative intent without unduly restricting

---

[5] Another provision of Section 2-19-143, which is inapplicable to the facts of this case, extends the same standard illustrated here to federal crimes considered infamous under Tennessee law. See Tenn. Code Ann. § 2-19-143(2).

[6] In 2006, the General Assembly enacted sections 40-29-201 through 40-29-205. Sections 40-29-203 through 40-29-205 are irrelevant to the facts before us today, and we, thus, limit our analysis to sections 40-29-201 and 40-29-202.

or expanding a statute's coverage beyond its intended scope." State v. Welch, 595 S.W.3d 615, 621 (Tenn. 2020) (quoting State v. Howard, 504 S.W.3d 260, 269 (Tenn. 2016)). We must interpret a statute "as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." Culbreath v. First Tenn. Bank Nat'l Ass'n, 44 S.W.3d 518, 524 (Tenn. 2001) (quoting Cafarelli v. Yancy, 226 F.3d 492, 499 (6th Cir. 2000)). A statute that has a clear meaning is to be "enforce[d] . . . as written," State v. Deberry, 651 S.W.3d 918, 925 (Tenn. 2022) (quoting Johnson v. Hopkins, 432 S.W.3d 840, 848 (Tenn. 2013)), and the legislature's intent is to be "derived from the plain and ordinary meaning of the statutory language." State v. Wilson, 132 S.W.3d 340, 341 (Tenn. 2004) (citing Carson Creek Vacation Resorts v. Dep't of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993)).

When two statutes conflict, "a more specific statutory provision takes precedence over a more general provision." Lovlace v. Copley, 418 S.W.3d 1, 20 (Tenn. 2013) (quoting Graham v. Caples, 325 S.W.3d 578, 582 (Tenn. 2010)). Generally, when "two acts conflict and cannot be reconciled, the prior act will be repealed or amended by implication to the extent of the inconsistency between the two." Hayes v. Gibson Cnty., 288 S.W.3d 334, 337 (Tenn. 2009) (quoting Cronin v. Howe, 906 S.W.2d 910, 912 (Tenn. 1995)). Nevertheless, "[r]epeals by implication . . . are disfavored in Tennessee" and are to "be recognized only when no fair and reasonable construction will permit the statutes to stand together." Id. (quoting Cronin, 906 S.W.2d at 912). Courts are to "presume that the General Assembly is aware of its own prior enactments and knows the state of the law when it enacts a subsequent statute." Lovlace, 418 S.W.3d at 20 (citing Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 527 (Tenn. 2010)).

Further, when multiple statutes "relate to the same subject matter or have a common purpose," they are to be considered *in pari materia*. In re Kaliyah S., 455 S.W.3d 533, 552 (Tenn. 2015). This principle requires courts to construe statutes "together" and "to give the intended effect to both" statutes. Id. at 548, 552. Under such circumstances, we seek to uncover "the most 'reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws.'" Id. at 552 (quoting Carver v. Citizen Utils. Co., 954 S.W.2d 34, 35 (Tenn. 1997)). Aligned with the related-statutes canon of statutory interpretation, it is "based upon a realistic assessment of what the legislature ought to have meant," and is derived from the expectations that "the body of the law should make sense" and that "it is the responsibility of the courts, within the permissible meanings of the text, to make it so." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 252 (2012).

We first address whether section 2-19-143(3) and sections 40-29-201 and 202 "relate to the same subject matter or have a common purpose." See In re Kaliyah S., 455

S.W.3d at 552. The intermediate appellate court concluded that they do, and accordingly considered the two statutes *in pari materia*. Falls v. Goins, 2021 WL 6052583, at *4. Mr. Falls asserts in his brief that "[t]he two statutes at issue govern the deprivation of the right to vote for a felony conviction and the restoration of that right, respectively."

Case law in Tennessee and beyond is scant regarding what is required for statutes to "relate to the same subject matter or have a common purpose," leaving courts like ours with rather broad discretion in making such determinations. One theory on the subject proposes that, "[t]o determine whether two statutes are *in pari materia* is simply to ask whether those two statutes belong together in a single subcategory of the law that, as a normative matter, ought to cohere." Anuj C. Desai, The Dilemma of Interstatutory Interpretation, 77 Wash. & Lee L. Rev. 177, 197 (2020). Another theory places boundaries around statutory text, and considers statutory "context" within those boundaries. Id. at 199. In our view, regardless of the approach utilized, it is clear from the plain language of the statutes that section 2-19-143(3) and sections 40-29-201 and 40-29-202 relate to the restoration of suffrage rights, and thus should be construed *in pari materia*.

Considering these statutes together leads us to the conclusion that it would be inappropriate to adopt Mr. Falls' position that section 2-19-143(3) is a self-executing statute that restored his right to vote in Tennessee instantaneously upon his receipt of a pardon in Virginia. To do so would be to shirk our duty to consider "the intended effect" of sections 40-29-201 and 40-29-202. See In re Kaliyah S., 455 S.W.3d at 552.

Mr. Falls asks our Court to read section 2-19-143(3) as if an individual who "has been pardoned or restored to the rights of citizenship by the governor or other appropriate authority of [his state of conviction]" *must* be re-enfranchised, regardless of other circumstances. However, the word "must" never actually appears in the statute. Instead, section 2-19-143(3) reads that those convicted of infamous crimes in others states cannot be allowed to vote "*unless* such person has been pardoned or restored to the rights of citizenship by the governor or other appropriate authority of such other state, or the person's full rights of citizenship have otherwise been restored in accordance with the laws of such other state, or the law of this state." Tenn. Code Ann. § 2-19-143(3) (emphasis added). As the State Officials phrase it, "Section 2-19-143(3) operates in the negative, not the positive."

The American Heritage Dictionary defines "unless" as "[e]xcept on the condition that; except under the circumstances that." Unless, American Heritage Dictionary 1323 (2d coll. ed. 1985). Accordingly, the text of section 2-19-143(3) that follows "unless" illustrates exceptions to the otherwise hardline rule that convicted infamous criminals are forbidden from voting or registering to vote. Nothing in the statute, however, leads us to conclude that compliance with an exception enumerated in that statute precludes the

legislature from enacting further re-enfranchisement requirements in separate statutes. Rather, the statute reads as if compliance with one of the three section 2-19-143(3) exceptions provides for the *possibility* that a person's suffrage rights will be restored. Mr. Falls argues that, because article I, section 5 of the Tennessee Constitution begins with a presumption of universal suffrage, we should read section 2-19-143(3) as self-executing. However, no portion of the text of article I, section 5 directs that our Court is to set aside established principles of statutory interpretation simply because an important constitutional right is involved.

Indeed, to the contrary, our Constitution affords the legislature broad discretion in limiting voting rights for those convicted of infamous crimes. See Tenn. Const. art. I, § 5; see also Wesley v. Collins, 791 F.2d 1255, 1261 (6th Cir. 1986) ("It is undisputed that a state may constitutionally disenfranchise convicted felons, and that the right of felons to vote is not fundamental." (internal citations omitted)). For example, the legislature could have written the statute to read that "no person who has been convicted in another state of a crime or offense which would constitute an infamous crime under the laws of this state, regardless of the sentence imposed, shall be allowed to register to vote or vote at any election in this state." Article I, section 5 does not mandate that the legislature provide convicted infamous criminals with a pathway or pathways to regain the right to vote.[7] On the other side of the coin, the legislature could have written a statute to read that "a person convicted of an infamous crime in another state who has been consequently disenfranchised *must* be re-enfranchised upon obtaining a pardon or restoration to the rights of citizenship by the governor or other appropriate authority of such other state." That hypothetical language might create the self-executing restoration of suffrage rights that Mr. Falls requests that we find here. Nevertheless, that language is just that, hypothetical, and does not reflect the language of the statute we are tasked with interpreting today.

Mr. Falls argues that only his proposed statutory interpretation "harmonizes the statutes and gives them their full meaning." However, we conclude that accepting Mr. Falls' proposed statutory interpretation would require us to, as the Court of Appeals aptly phrased it, "put Tenn. Code Ann. [section] 2-19-143 into a silo and ignore subsequent legislative enactments regarding re-enfranchisement." Falls v. Goins, 2021 WL 6052583, at *5. Section 40-29-201 states plainly that "[t]he provisions and procedures of this part shall apply to and govern restoration of the right of suffrage in this state to *any person* who has been disqualified from exercising that right by reason of a conviction in any state or federal court of an infamous crime." Tenn. Code Ann. § 40-29-201 (emphasis added). Considering that language in conjunction with section 2-19-143(3), we find no reason to

---

[7] The legislature has provided a list of enumerated crimes that bar persons from voting altogether. See Tenn. Code Ann. § 40-29-204 (prohibiting persons convicted of voter fraud, treason, first degree murder, aggravated rape, and specified other crimes from ever obtaining eligibility to vote).

exempt some persons who have been disqualified from voting from abiding by the requirements set forth in section 40-29-202. We reject Mr. Falls' assertions that section 2-19-143(3) is a self-executing provision. Reading section 2-19-143(3) and sections 40-29-201 and 40-29-202 *in pari materia*, we conclude that his interpretation fails to allow section 40-29-202 to apply to "any person . . . disqualified from exercising [the right to vote] by reason of a conviction in any state or federal court of an infamous crime" and thus would not allow the statute to achieve its "intended effect." See Tenn. Code. Ann. § 40-29-202; In re Kaliyah S., 455 S.W.3d at 552.

Mr. Falls further asserts that requiring a person to abide by both section 2-19-143(3) and section 40-29-202 would effectively "nullif[y]" the first two exceptions under section 2-19-143(3). We disagree. Under our interpretation, Mr. Falls must fulfill the requirements set forth in section 40-29-202 in addition to meeting one of the 2-19-143(3) exceptions in order to regain his right to vote because Section 40-29-202 acts to supplement any chosen 2-19-143(3) exception. Had Mr. Falls utilized section 2-19-143(3)'s second or third exception, he still would have had to do more than simply comply with the requirements of section 40-29-202 to regain his right to vote. Rather, those exceptions require that a "person's full rights of citizenship" be restored. Tenn. Code Ann. § 2-19-143(3). Full restoration of citizenship rights in Tennessee, for example, goes beyond sections 40-29-201 through -205. Section 40-29-201(c) reads that "[t]his part shall apply *only* to restoration of the right of suffrage. For restoration of all other rights of citizenship forfeited as the result of a conviction for an infamous crime, part 1 of this chapter shall apply." Tenn. Code. Ann. § 40-29-201(c) (emphasis added).

To comply with the first exception set forth in section 2-19-143(3), a person must be "pardoned or restored to the rights of citizenship by the governor or other appropriate authority of such other state." But, to regain the right of suffrage, that person must also fulfill the requirements laid out in section 40-29-202. To comply with the second 2-19-143(3) exception, one must have "full rights of citizenship … restored in accordance with the laws [of the state of prosecution]." To regain the right of suffrage, that person also must fulfill the requirements laid out in section 40-29-202. To comply with the third exception, one must comply with all of chapter 29 of the Tennessee Code, including sections 40-29-101 through -109. Yet, to regain the right of suffrage, that person must also fulfill the requirements laid out in section 40-29-202.

Essentially, compliance with the first section 2-19-143(3) exception allows a person to circumvent the general provisions set forth in section 40-29-101 through -109 or a comparable citizenship restoration statute in that person's state of conviction, but not the voting rights requirements of section 40-29-201 through -205 which apply to "any person who has been disqualified from exercising [the right of suffrage] by reason of a conviction in any state or federal court of an infamous crime." Tenn. Code Ann. § 40-29-201.

Therefore, each person convicted of an infamous crime in another state who seeks to regain the right of suffrage in our state must comply with both an exception set forth in section 2-19-143(3) and the additional requirements of sections 40-29-201 through -205. Reading sections 2-19-143(3), 40-29-201, and 40-29-202 *in pari materia* creates a two-step statutory process that is necessary to complete in its entirety before the right of suffrage is restored.

It is also necessary to briefly address cases raised by Mr. Falls in his brief. As Mr. Falls observes in his brief, the Court of Appeals held in Crutchfield v. Collins that the right of universal suffrage is self-executing, as "any citizen may rely upon it independently of any legislative enactment." 607 S.W.2d 478, 481 (Tenn. Ct. App. 1980). By contrast, exceptions depriving convicted criminals of their right to vote are not self-executing. Id. Each of the principles set forth in Crutchfield was affirmed by our Court in Gaskin v. Collins, 661 S.W.2d 865, 867 (Tenn. 1983). The rules iterated in these cases are somewhat helpful to our Court's analysis, as they provide valuable context on the subject matter. However, it does not follow that they are instructive on the issue at the core of this case. As the intermediate appellate court noted, neither of those cases "involve the interplay between and applicability of the statutes at issue in this case." Falls v. Goins, 2021 WL 6052583, at *5. No question has been raised as to whether the right of universal suffrage is "self-executing" in this case. Presumably, had Mr. Falls established residency in Tennessee without any sort of criminal record, he would have been permitted to register to vote in 2020 with no questions asked. Likewise, no question has been raised as to whether Mr. Falls was at one point deprived of his right to vote by an act of the legislature. He admits that he was. Therefore, neither Crutchfield nor Gaskin proves to be particularly persuasive on these facts, especially given that sections 40-29-201 and 40-29-202 were not enacted until several years after those two cases were decided.

Additionally, *amicus curiae*, The League of Women Voters of Tennessee, argue that our holding would violate the Full Faith and Credit Clause of the United States Constitution. This argument is without merit. Article IV, section 1 of the United States Constitution reads: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const. art. IV, § 1. The United States Supreme Court has recognized that "a State need not 'substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" Franchise Tax Bd. of Cal. v. Hyatt, 578 U.S. 171, 179 (2016) (quoting Franchise Tax Bd. of Cal. v. Hyatt, 538 U.S. 488, 488–89 (2003)) (internal quotations omitted). Both the United States Constitution and article I, section 5 of the Tennessee Constitution provide our legislature with the authority to disenfranchise convicted felons, Wesley, 791 F.2d at 1261, and it

would be impossible for the states to legislate the issue individually if each were required to adopt the policy decisions of other states despite their contradictory nature.[8]

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of Appeals. Reading Tennessee Code Annotated sections 2-19-143(3), 40-29-201, and 40-29-202 *in pari materia*, we find that those persons convicted of infamous crimes in other states must comply with the re-enfranchisement provisions listed in section 2-19-143(3) and section 40-29-202 when they seek to obtain re-enfranchisement after establishing residency in Tennessee. Because there is no dispute of material fact beyond the question of statutory construction addressed today, the trial court properly granted summary judgment in favor of the State Officials. The costs of this appeal are to be assessed against Mr. Ernest Falls.

_____

JEFFREY S. BIVINS, JUSTICE

---

[8] The League of Women Voters of Tennessee also raise several policy-based concerns regarding the challenges disenfranchised voters in Tennessee face. We take this opportunity to state, as we have on numerous other occasions, that it is not our duty "to alter or amend a statute, question the statute's reasonableness, or 'substitut[e] [our] own policy judgments for those of the legislature.'" Griffin v. Shelter Mut. Ins. Co., 18 S.W.3d 195, 200–01 (Tenn. 2000) (quoting BellSouth Telecomms., Inc. v. Greer, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997) (alterations in original)). "Moral question[s]" are to be "resolved in this State by our Legislature as the representatives of the people." State v. Barber, 753 S.W.2d 659, 670 (Tenn. 1988).